[No. 752.  Decided March 7, 1893.]

ALBERT W. RICHARDSON, *Appellant*, v. CARBON HILL COAL COMPANY, *Respondent*.

PRACTICE—AMENDMENT OF PLEADING—NON-SUIT—CONTRIBUTORY NEGLIGENCE — NEGLIGENCE — LIABILITY FOR PROVIDING UN-SKILLFUL PHYSICIAN.

Where leave has been obtained to file an amended complaint to correspond with the proofs, it is error to direct a non-suit for insufficiency of the original complaint, if the proofs show a cause of action.

Where an employé of a coal company gets upon one end of the brake beam of the company's engine, in order to ride through a narrow and dark tunnel on the way to the office to get his pay, and is injured by a projecting rock in the tunnel striking his knee and throwing him to the ground, breaking his leg and dislocating his hip, he is guilty of contributory negligence although riding on the engine at the direction of a foreman, it not being customary for the men to ride upon the brake beam, and the company having provided another way to reach the office than that through the tunnel.

In an action against a company for injuries sustained in consequence of the negligent and unskillful treatment of the surgeon

provided by the company, a non-suit is not warranted where the evidence shows that the company retained one dollar per month from the plaintiff's pay for hospital dues and a physician; that the company by the acts of its officers assumed to provide a physician to treat plaintiff, and that such physician was a negligent and unfit person, although there was no proof of any express contract relation existing between the company and plaintiff with reference to providing him a hospital and a physician, and he was in fact taken to the house of a relative instead of to the hospital. (HOYT and STILES, JJ., dissent.)

*Appeal from Superior Court, Pierce County.*

*Pritchard, Stevens, Grosscup & Seymour,* for appellant.
*Judson & Sharpstein,* for respondent.

The opinion of the court was delivered by

SCOTT, J.— The respondent, a corporation, was engaged in the business of mining coal, and transporting the same to shipping points.   The appellant was employed by said company as a laborer, but did not have continuous employment.   On the 15th day of April, 1890, while going to the company's office for his pay, not being at work upon said day, he, with several others, got upon a brake beam in front of an engine used to haul the coal cars for said company, to ride through a tunnel on his way to said office.   There were no cars attached to the engine and no room for him elsewhere than on the brake beam.   The room upon said brake beam was so occupied that appellant sat at one extreme outer edge, and in passing through the tunnel a projecting rock caught his knee, which must have been at that time outside of the line of the engine, and threw him to the ground with such force as to break one of his legs, and to dislocate it at the hip joint.   He was treated by Dr. Garner, a physician in the employ of the company, and he brought an action for damages for injuries sustained in getting thrown from the engine, and also for negligent and unskillful treatment of his

injuries by said physician.   At the conclusion of his testimony he asked and obtained leave from the court to file an amended complaint in accordance with the proofs introduced.   Immediately thereafter, before the filing of said amended complaint, the defendant moved for a non-suit because the complaint did not state facts sufficient to constitute a cause of action, and because the proof was insufficient to support a recovery.   The motion for a non-suit was granted, and plaintiff appealed.

Under the circumstances no question going to the sufficiency of the complaint can be considered, for the plaintiff had obtained leave to file an amended complaint to correspond with the proofs, and upon the motion for non-suit the cause should be treated as though a sufficient amended complaint had been filed.   Consequently, if the proofs showed that the plaintiff had a cause of action, the court erred in directing a non-suit.

The plaintiff sought to recover upon two grounds.   As to the first ground, relating to the liability of the defendant for the injuries sustained in getting thrown from the engine, we are satisfied that the ruling of the court was right, because the proof showed that the plaintiff was guilty of contributory negligence.   To have reached the company's office it was not necessary for him to have gone through the tunnel, for another way had been provided by the company to go thereto.   The proof showed that it was not customary for the employés of the company to ride upon this brake beam; that when they did carry men through the tunnel on the railroad, as they did occasionally, the men road in the coal cars, and that the brake beam had been provided only for the brakemen.   It was apparent from the very situation that a person occupying a place at the outer end of the brake beam crowded with men, as was this one, was in a dangerous position in going through a narrow and dark tunnel.   At that time the engine was not

in the hands of the regular train men, but was being operated by other employés of the company, and the plaintiff knew this.  He, with several others, was told by one of the company's foremen to get on and ride, and in response to this invitation he got upon the brake beam, with the result as aforesaid.  The appellant must be held to have known that when he took the position on the brake beam, as he did, for the purpose of passing through the tunnel, there was considerable danger connected therewith, and he must be held to have assumed the apparent risk of the journey, under the circumstances.  Consequently it is not necessary to determine whether the company would have been liable for the injury if the appellant's own negligence had not contributed thereto.

The proof is too uncertain and meager to determine what rights the plaintiff has under his second cause of action for additional injuries sustained in consequence of the neglect and unskillful treatment of him by Dr. Garner.

The proof shows that it was the custom of the company to retain one dollar per month from the pay of its employés, and there was testimony to show that the fund so created was for maintaining a hospital and employing a physician, for the purpose of caring for and treating employés of the company when they were in need of the same. There was no proof to show that said employés were only entitled to such treatment in case they were injured while in the performance of their duties as employés of the company.  The proofs show that there was a building known as the company's hospital, and that Dr. Garner was the company's physician, and that he was employed by the company in accordance with such understanding to treat its employés.  There was no proof of any express contract between the company and the appellant with reference to his right to medical and surgical treatment, other than that which arises from the circumstances proven.  It appeared

that the company was operating several coal mines, and had several hundred men in its employ.   There was nothing to show that the miners or laborers of the company other than its officers had any right to supervise the expenditure of this fund in any way, or any control of the hospital or the selection of a physician.

It does not appear whether this hospital was maintained by the company as a charitable institution, or whether it was for the purpose of deriving profit therefrom, and a determination of this question bears materially upon the plaintiff's rights in the premises.   If said hospital was maintained as a charitable institution, and was not designed as a source of profit to the company, but was simply provided as a place in which its laborers might stay when sick or disabled for the purpose of being cared for, and the company simply further undertook to provide a physician for treating the men without expense to them, the whole being in the nature of a gratuity on the part of the company, it would only be liable for a failure to exercise due care in selecting a competent physician.   Under such an arrangement the company could not be held to have agreed to treat the injured employé through the agency of a physician, but only agreed to procure for him the services of one, and he would not be the servant of the company.

If, on the other hand, the company was conducting a hospital with its own physician for the purpose of deriving profit therefrom, or if it contracted with the appellant to furnish him with the services of a competent physician, and to properly treat him in case of an injury, it would be liable for the negligence or want of skill of its physician in attending him.   1 Shear. & R., Neg., § 331; 9 Am. & Eng. Enc. of Law, p. 772, note, "Torts of Hospitals;" *Glavin v. Rhode Island Hospital*, 12 R. I. 411.

There was testimony to show that the appellant was very negligently and unskillfully treated by said Dr. Garner,

by reason whereof his injuries and sufferings were much aggravated, and which caused the injured leg to become much shorter than the other one, and much weaker than it otherwise would have been, and that such injuries were thereby rendered permanent in character. There was testimony to show that Garner was not a competent physician, in fact that he was grossly incompetent; that he was habitually very seriously under the influence of liquor, so as to render him unfit for duty, and was in this condition on several occasions when he called upon and treated the appellant.

There was no direct proof to show that the company had been negligent in selecting him as its physician, nor as to how or when he was selected, or how long he had been in the employ of the company, or how well he had been recommended, if at all; nor do we undertake to say what the company should do in employing a doctor towards ascertaining his competency and qualifications. That the company must, in any event, have exercised reasonable care in the selection of such a person is evident. It is also evident that the mere possession of a diploma or license to practice by a physician would not be sufficient evidence of his competency, for, having this, he might still be totally unfit to perform the services of a physician or surgeon.

Under the circumstances of this case we think the proof was sufficient to raise a presumption of negligence upon the part of the company in employing this physician, and, therefore, it was incumbent upon the company to rebut this presumption, and to show that it had exercised reasonable care in selecting him. The facts attending this matter are peculiarly within the knowledge of the company, and the burden of proof in this particular, under the circumstances, should be held to be upon it. 1 Shear. & R., Neg., §§ 58, 59.

It follows that whatever the contract may have been be-

tween the appellant and the company, and however it may have been conducting the hospital, and under whatever circumstances it may have employed or furnished the physician, the court erred in granting the non-suit, for regarding the case in its most favorable aspect for the company under the proofs offered, without any further explanation or rebuttal, the company would be liable for negligence in employing Garner if it is true that he was an unfit person for such a position.

Of course a greater liability would rest upon the company if it was conducting the hospital for the purpose of deriving a profit therefrom, or if it had contracted with the appellant to provide him suitable and skillful medical treatment.

It is contended by the respondent that there is no proof whatever of any contract relation existing between it and the appellant with reference to providing him a hospital or to provide a physician for him.   But we do not agree with this.   It appears, as before stated, that the company deducted regularly one dollar a month from the pay of each of its laborers, which was generally understood to be for the purposes stated.   Furthermore, at the time the appellant was injured, one Mr. Lewis, who, as there was proof to show, was employed by the company as "general foreman of the mines," sent after Dr. Garner, the company's surgeon, to come and attend him.   Some time thereafter, one Mr. Davies, who was the superintendent of the company, inquired why appellant was not brought to the company's hospital, he having been taken to the house of a relative at the time he was injured, and he was told that they preferred to keep him there so that his mother could better wait upon him.

It also appeared that at one time a brother of the appellant called upon Mr. Davies and complained of the way Garner was treating appellant, and told him they wanted

another surgeon, and asked if the company would stand the expense of another surgeon, and Mr. Davies informed him that the company would not do so, but that they might get another doctor if they chose to, and the company would see that Dr. Garner was there.   The appellant was never asked to pay for Garner's services.   The company assumed to provide a physician to treat the appellant by the acts of its said officers.

It further appears that some time after the appellant was injured, a meeting of the miners was called for the purpose of appointing a committee to take charge of the hospital, and to ·supervise the expenditure of the fund raised by the assessment as aforesaid upon the laborers.

Under all the circumstances, we think there was sufficient proof to go to the jury as tending to establish the liability of the company upon one of said grounds for the additional injuries sustained by appellant in consequence of the neglect and unskillful treatment of him by said physician, and therefore the court erred in directing a non-suit.

The judgment is reversed and the cause remanded, with instructions to the lower court to designate a time within which the parties may file new pleadings, and to re-try the cause.

DUNBAR, C. J., and ANDERS, J., concur.

HOYT, J. ( *dissenting* ).—I agree with the majority of the court that the proofs failed to show any liability on the part of the company for the result of the accident by which the plaintiff was injured.   But I am unable to agree with them that a *prima facie* case, showing any liability on the part of the respondent growing out of the attendance of Dr. Garner upon the appellant, was. established by the proofs.   There was absolutely no proof tending in the least degree to show any agreement or understanding between the respondent and the plaintiff that he should be

furnished with medical attendance when away from the hospital of the company.    The most that the proof tended to show was, that by reason of the payment of certain hospital dues, it was understood that the employés should be entitled to the privileges of the hospital maintained by the company in the vicinity of its mine.    It follows that there was no proof whatever tending to show that the company owed any duty to appellant to provide him medical attendance at the home of his friends, where he was taken for the reason, as alleged by them, that he could have better care there than at the hospital of the company.

Under these circumstances, the fact that the surgeon who happened to be called upon to attend the plaintiff was the same one who was employed by the company can, in my opinion, in no sense tend to show any liability of the company resulting from want of skill on the part of such surgeon in his treatment of the plaintiff.    And even if we assume that such surgeon was requested to render the services by the company, the rule of liability would not be changed.    If the company was under no obligation to furnish the services, the fact that it simply permitted the plaintiff to avail himself of the services of a person in their employ could not charge the company with liability.    The attendance would still be at the instance of the plaintiff and not at all at the instance of the company.    What they would do in such a case in a legal sense would be to waive their right to control the surgeon and allow him, at the instance of the plaintiff, to render the services.

The case is not presented in which the company should assume the absolute control of a person situated as the plaintiff was, and refuse to allow any other than its surgeon to attend upon him.    In such a case the company itself could perhaps be said to have charge and might very well be held responsible for the result.    But in this case there is not only an absence of proof tending to show any

such assumption on the part of the company, but there is direct testimony tending to show the fact that the company expressed an entire willingness that any other surgeon should be employed, but stated that it would not be responsible for his compensation.

In my view, the proofs present simply the case of one allowing his surgeon to render a favor for another person at his request. And to hold that by so doing he became responsible for any injury that might happen on account of the services thus rendered would, I think, establish a most dangerous doctrine, and tend much to repress the charitable instincts of the human race, which, under the most favorable circumstances, are not very free to manifest themselves. In my opinion, the judgment of the lower court should have been affirmed.

STILES, J., concurs.