Chicago, Burlington & Quincy Railroad Company
v. John W. Howard.

Filed June 21, 1895. No. 6295.

1. **Fellow-Servants:** Brakemen: Negligence: Damages. A brakeman is a fellow-servant of another brakeman when both are employed upon the same train; and an accident which happens to one solely by reason of the negligence of the other does not render liable for consequent damages the common employer of both.

2. ———: Defective Appliances: Negligence of Servant. The happening of an accident through the displacement of a draw-bar or coupler of a designated kind or design, is not sufficient proof that such kind or design of appliance is defective, when the displacement complained of is clearly shown to have been caused by the negligent and reckless manner in which the car equipped with such coupler or draw-bar was violently pushed against another car.

3. **Physicians and Surgeons:** Employment by Volunteer: Malpractice: Liability of Employer for Damages. A surgeon is required in the exercise of his profession to employ only that degree of knowledge and skill ordinarily possessed by members of the same profession. Where one as a volunteer undertakes to provide necessary surgical services for another, he cannot be held liable in damages for the negligence or malpractice of such surgeon as he summons, provided such surgeon possesses the knowledge and skill ordinarily possessed by other surgeons, and the employer had no reason to suspect that such surgeon would neglect or fail to use his knowledge and skill to the advantage of his patient.

Error from the district court of Adams county. Tried below before Beall, J.

The facts are stated by the commissioner.

*T. M. Marquett, J. A. Kilroy*, and *J. W. Deweese*, for plaintiff in error:

We contend that under the evidence and the findings of

the jury the plaintiff below was not entitled to recover anything. It is clear that the accident was caused solely by reason of the fact that the plaintiff himself left the coal car too close to the switch track, and being thus the efficient cause of the accident himself, he cannot recover for the result of the injury. If plaintiff was free from fault he cannot recover, because the brakemen were fellow-servants. (*Newman v. Chicago, M. & St. P. R. Co.*, 44 Am. & Eng. R. Cases [Ia.], 555, and authorities cited; *Chicago, St. P., M. & O. R. Co. v. Lundstrom*, 16 Neb., 258; *Ell v. Northern P. R. Co.*, 48 N. W. Rep. [N. Dak.], 222; *English v. Chicago, M. & St. P. R. Co.*, 24 Fed. Rep., 906; *Highland Avenue & B. R. Co. v. Walters*, 8 So. Rep. [Ala.], 360; *Muldowney v. Illinois Central R. Co.*, 36 Ia., 466; *Davis v. Detroit & M. R. Co.*, 20 Mich., 128; *Brady v. Ludlow Mfg. Co.*, 28 N. E. Rep. [Mass.], 901.)

The jury made a special finding to the effect that the cause of the accident was the fact of leaving the coal car so close to the switch that the stock car would not pass, and that otherwise the accident would not have happened. We claim that the special finding governs in preference to the general verdict, and that the court should have rendered judgment in favor of the defendant below on the special finding of the jury. (*Baird v. Chicago, R. I. & P. R. Co.*, 7 N. W. Rep. [Ia.], 460; *Korrady v. Lake Shore & M. S. R. Co.*, 29 N. E. Rep. [Ind.], 1071; *Rice v. City of Evansville*, 108 Ind., 7; *Lake Shore & M. S. R. Co. v. Pinchin*, 13 N. E. Rep. [Ind.], 677; *Thompson v. Cincinnati L. & C. R. Co.*, 54 Ind., 201; *Ogg v. Sheehan*, 17 Neb., 323; *Marx v. Kilpatrick*, 25 Neb., 118; *Bierbower v. Polk*, 17 Neb., 275.)

After the testimony of plaintiff was in, showing the accident would not have happened but for the fact that he had left the coal car too close to the switch track, and showing that was what caused the collision and the injury, the defendant moved the court for a nonsuit, which the court

erroneously overruled. (*Flemming v. Western P. R. Co.*, 49 Cal., 257; *Davis v. Detroit & M. R. Co.*, 20 Mich., 128; *Hart v. Peters*, 13 N. W. Rep. [Wis.], 219; *Hobson v. New Mexico & A. R. Co.*, 11 Pac. Rep. [Ariz.], 545; *Burlington & M. R. R. Co. v. Wendt*, 12 Neb., 76; *Manzy v. Hardy*, 13 Neb., 36; *Osborne v. Kline*, 18 Neb., 314.)

We do not concede that there was maltreatment on part of the physicians, but if there was, the company is not liable for damages. (*City of Crete v. Childs*, 11 Neb., 252; *Union P. R. Co. v. Artist*, 60 Fed. Rep., 365; *Atchison, T. & S. F. R. Co. v. Zeiler*, 38 Pac. Rep. [Kan.], 282; *Pullman Palace Car Co. v. Bluhm*, 109 Ill., 24; *Lyons v. Erie R. Co.*, 57 N. Y., 489; *Stover v. Bluehill*, 51 Me., 443; *Loeser v. Humphrey*, 41 O. St., 378.)

*Dilworth & Smith*, also for plaintiff in error.

*Capps & Stevens, contra:*

In support of the argument that there was such negligence on part of the company in failing to furnish proper machinery and appliances as to make it liable for damages, counsel for defendant in error cited the following authorities: *Grand Trunk R. Co. v. Cummings*, 106 U. S., 700; *Delude v. St. Paul City R. Co.*, 56 N.W. Rep. [Minn.], 461; *Farwell v. Boston & W. R. Co.*, 4 Met. [Mass.], 49; *Cayzer v. Taylor*, 10 Gray [Mass.], 274; *Hamilton v. Rich Hill Coal Mining Co.*, 18 S. W. Rep. [Mo.], 977; *Houston & T. R. Co. v. Oram*, 49 Tex., 341; *New Jersey & N. Y. R. Co. v. Young*, 49 Fed. Rep., 723; *Taylor v. Missouri P. R. Co.*, 16 S. W. Rep. [Mo.], 206; *Galveston H. & S. A. R. Co. v. Garrett*, 13 S. W. Rep. [Tex.], 62; *McCully v. Clarke*, 40 Pa. St., 402; *Salmon v. Delaware, L. & W. R. Co.*, 9 Vroom [N. J.], 11.

As to the liability of the company for the malpractice of the physicians the following authorities were cited by defendant in error: *Mowrey v. Central City R. Co.*, 66 Barb.

[N. Y.], 46; *Townley v. Chicago, M. & St. P. R. Co.*, 53 Wis., 633; Shearman & Redfield, Negligence, secs. 438, 439, 441.   •

RYAN, C.

1. This action was brought by the defendant in error in the district court of Adams county for the recovery of damages alleged to have been sustained by defendant in error solely through the negligence of the plaintiff in error. In the petition two railroad companies were named as defendants, but as these designations seem to refer to but one company, we shall hereafter speak of the defendants as a single entity. Plaintiff in the district court was a brakeman on a freight train, of which the runs, always made in daylight, were between Hastings and Lincoln. On June 29, 1891, this train, on its way from Hastings to Lincoln, stopped in the afternoon at Dorchester. There it was required that a loaded thirty-ton coal car should be switched from a side track into the train to be hauled to Lincoln. This was done by placing the coal car upon the main track and, after the switch had been turned for the purpose, shoving the coal car back upon the main track beyond the switch. The place where the coal car could be safely left on the main track was, by signals, indicated by brakeman Morledge, who turned the switch as required, and the coal car was left at a point thus indicated by him. Owing to some inadvertence, or perhaps some miscalculation of this brakeman, the coal car was permitted to come to a stop at a point so near the switch that a car passing on the side track would not clear it. It is claimed it was not known to plaintiff that the coal car was left at such a point as to render probable an injury to any one riding on a car along the side track, and that if to such a person an injury happened by reason of a collision with the coal car the railroad company should be liable for resulting damages.

2. After the coal car had been disposed of, the plaintiff,

under directions of the conductor, undertook to place a stock car opposite a certain chute on the side track.    Mr. Morledge, after adjusting the switch, signaled for the engine to be backed rapidly.    This signal was communicated to the fireman, who in turn signaled to the engineer, and the backing was promptly done as required.    Plaintiff stepped upon the platform of a car between the stock car and the engine, known as the "show car."    This was an old passenger car equipped with a Miller coupler and was used by a traveling party of show people.    Mr. Morledge, when the nearest platform of the show car reached him, stepped upon said platform just as plaintiff, having reached the stock car just ahead of the show car, was attempting to reach the ladder for the purpose of climbing to the top of the stock car that he might there manage its brakes.    His right foot was on the hand-rail on the corner of the stock car.    At this instant there was a collision between the corner of the stock car moving at the rate of about seven miles per hour and the coal car standing on the main track. By the resulting jolt the draw-bar of the show car was bent out of shape, and for some reason, not satisfactorily explained, the Miller coupler struck the iron rod on which rested the plaintiff's foot in such manner as to catch plaintiff's said foot between said iron rod and the end of the show car, and at the same time bent the rod against said foot and greatly bruised it.    In argument it is urged that the railroad company was negligent in permitting to be placed in its train the show car, equipped as it was with a Miller coupler.

3. The injured man was taken to Hastings on the first passenger train going westward.    In the petition it was alleged that immediately after plaintiff's arrival in Hastings the railroad company's yardmaster at that place summoned Dr. Chapman, who made an examination of plaintiff's injuries and said he thought he could save the foot, and that "thereafter Dr. Chapman, of Hastings, Dr. Livingstone,

of Plattsmouth, and Dr. Denny, of Lincoln, both and all of whom were duly authorized agents, physicians, and surgeons of and in the employ and pay of defendants, then and thereafter, as will be more fully told herein, took full and complete charge of plaintiff's injury and case. Plaintiff further alleges the fact to be that the said Chapman, Denny, and Livingstone, the physicians and surgeons above named, agents of defendants, are each and all of them men who possess as well as profess a high degree of skill, ability, and knowledge of medicine and surgery." Following the above quoted language it was averred, in effect, that by reason of the neglect of said surgeons to amputate his injured foot, plaintiff was caused to suffer much pain, and that finally the said amputation was negligently performed. On account of the aggravation of plaintiff's sufferings through the alleged negligence of the aforesaid surgeons he claimed he should recover damages against the railroad company. On his aforesaid causes of action there was a verdict and judgment for $6,000.

4. It is observable that there was no complaint in the petition that Mr. Morledge was not a careful, competent brakeman. From the fact that this brakeman did not signal so that the coal car should be placed on the main track beyond the reach of a car on the side track, it is however urged that the railroad company should be held liable. That this proposition must have been approved by the district court is evident from the fact judgment was rendered on the general verdict, notwithstanding the answers of the jury to special interrogatories numbered 1 and 3. These are as follows:

"1. Was the plaintiff injured by reason of the coal car being left on the main track so close to the switch as not to leave room for the cars to pass by on the switch without collision? Ans. Yes."

"3. Would the accident have happened if the coal car had been left at a sufficient and safe distance from the

switch so as to leave room for the cars to pass in on the side track without striking the coal car? Ans. No."

There is no question made, nor is there room for doubt, that Mr. Morledge and the defendant in error were fellow-servants in the strictest legal sense of that term. They were employed in the management of the same train, and every consideration which operates to exonerate the employer from liability for an injury sustained by an employe, owing entirely to the negligence of a co-servant, applies with full force. (See *Youll v. Sioux City & P. R. Co.*, 66 Ia., 346; *Chicago & A. R. Co. v. Rush*, 84 Ill., 570; *Atchison, T. & S. F. R. Co. v. Plunkett*, 25 Kan., 188; *Besel v. New York C. & H. R. R. Co.*, 70 N. Y., 171; *Houston & T. C. R. Co. v. Gilmore*, 62 Tex., 391.) The fact that there was negligence, and that it was the sole cause of the injury, was fixed beyond peradventure by the above special findings of the jury. It is provided by section 294 of the Code of Civil Procedure: "When the special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly." Under the admitted facts, and those which, with the same binding effect, had been established by the above special findings of the jury, there was error in rendering judgment in accordance with the general verdict.

5. There was no evidence that the railroad company was guilty of negligence in permitting to be placed upon its line of railroad the show car, on account of any of its parts being out of repair. Such criticism as has been offered has been with reference to the alleged fact that the Miller coupler was one of bad design. There was no proof of this claim other than such inferences as were drawn from the fact that at the time the stock car, moving at the rate of seven miles per hour, was suddenly brought to a stop by the loaded coal car, it caused the Miller coupler, or rather the draw-bar connected with it, to become bent, and

to this circumstance the injuries of the defendant in error were attributable. There was no evidence whatever that any other kind of a coupler or draw-bar would have sustained, without displacement, the shock to which this was subjected. What we are asked to sanction is, the proposition that when this accident happened, the mere fact that the Miller coupler or draw-bar struck the foot of the defendant in error justified an inference that this coupler or draw-bar was therefore dangerous. There was undisputed testimony given by Mr. Morledge that, in view of complaints of the inmates of the show car as to the rough handling of their car, defendant in error had suggested to this witness that said show people be given "a damn good shaking up." It would seem that, speaking after the manner of men, this was quite successfully accomplished; and yet there is no known rule which requires that railroad companies, by the use of appliances of unusual design or strength, should anticipate and provide against the result of such pranks. It was laid down by the majority opinion in *Chicago, B. & Q. R. Co. v. Landauer*, 36 Neb., 642, that the inference of negligence against a railroad company must be a reasonable one, and that, where it is impossible to infer negligence from established facts without reasoning irrationally and contrary to common sense and the experience of average men, there is no question for the jury, and the court should direct a verdict for the defendant. In *Kilpatrick v. Richardson*, 40 Neb., 478, it was held that the presumption of negligence, where entertained, must be from proved and conceded facts, and from such, must be the logical, reasonable, and probable deduction. There was no evidence which justified the submission of this case to the jury because of negligence on the railroad company's part, which caused or contributed to the infliction of the injury complained of.

6. It is, however, urged that the railroad company should be held liable for the alleged malpractice of its sur-

41

geons. The fifth and sixth special interrogatories, with their respective answers thereto by the jury, were in this language :

" 5. Do you find that the plaintiff is entitled to recover on account of the medical treatment that he received after the accident? Ans. Yes.

"By court: Do you find that the plaintiff is entitled to recover for both the accident and the medical treatment? Ans. Yes."

It has already been shown that the railroad company had been guilty of no negligence contributing to the accident whereby the defendant in error was injured, wherefore, at the time when its alleged surgeons were called in a professional capacity to attend upon the defendant in error, the situation was as though the summoning of these professional gentlemen had been by an individual or corporation not engaged in operating a railroad. It was alleged in the petition that the surgeons, who in an alleged unskillful manner amputated the foot of the defendant in error, were at that time "duly authorized agents, physicians, and surgeons of and in the employ and pay of defendants, then and thereafter." . This, if true, entitled the railroad company to demand the rendition of such surgical aid for its employes as it chose to require in their behalf. Since it was alleged in the petition that the yardmaster was duly authorized to call in Dr. Chapman, it may be assumed that the services of this surgeon were rendered upon the special request of the railroad company. As to the services of the other two, the entire dependence seems to be upon the fact alleged generally, that they, as well as Dr. Chapman, were its authorized agents, physicians, and surgeons. At the time they assumed the control of Mr. Howard's case, the most that can be said is, that they were required so to do by their employer, the plaintiff in error. It was alleged in the petition that these physicians and surgeons professed to possess, and in fact did possess, a high

degree of skill, ability, and knowledge of medicine and surgery. In *Hewitt v. Eisenbart,* 36 Neb., 794, a malpractice case, the following rule was recognized: "The law requires of a surgeon, in the treatment of his patient, the exercise of that degree of knowledge and skill ordinarily possessed by the members of the medical profession." In the case at bar there was no attempt to prove what particular degree of knowledge and skill was possessed by the surgeons who performed the amputation of which complaint is now made. It was by plaintiff alleged, and therefore, as against his present contentions it must be accepted as true, that they possessed a high degree of skill, ability, and knowledge. When the railroad company required services to be performed for the defendant in error by these surgeons, it is not under the circumstances of this case liable for more than a judicious selection, and this it made without question. It would be absurd to insist that not only this selection should be prudent, but, that the company should guaranty that the surgeons selected would make no mistake and be guilty of no negligence. The very fact that there was required of the surgeons in the line of their duties the possession of a superior degree of skill and of knowledge of medicine, precludes the possibility that the officers or employes of the railroad company should have exercised a supervisory control and direction of the time when, and the mode in which, the necessary surgical operation should be performed. It was required only that the surgeons selected should possess that degree of knowledge and skill ordinarily possessed by members of the same profession. A fair construction of the language of plaintiff's petition more than met this requirement, and the plaintiff in error was not responsible for the manner in which such knowledge and skill were employed, in the absence on its part of any express limitations or directions to their surgeons, and of the possession of such knowledge as would lead a reasonable, careful person to suspect that there would probably be negligence or malpractice.

7. From a full consideration of all the facts we are satisfied that the defendant in error was not entitled to a verdict, and that upon the request made the court should have so instructed the jury. The questions considered arose naturally in order before the alleged release of the railroad company executed in consideration of the payment to defendant in error of certain sums by the Burlington Relief Association, of which he was a member. The conclusion that plaintiff was not entitled to recover upon the facts pleaded and proved has relieved us of the necessity of considering the effect of the release alleged and established. The judgment of the district court is

REVERSED.