## J. L. ZUMWALT v. TEXAS CENTRAL RAILROAD COMPANY.

Decided June 26, 1909.

**1.—Railroad—Hospital—Liability for Maltreatment—Evidence—Question of Fact.**

The issue being whether or not a railroad company in the maintenance of a hospital for the treatment of its sick and injured employees, said hospital being supported by deductions from the wages of the employees, was engaged in a charity, evidence considered and held to raise a question of fact which should have been submitted to the jury.

**2.—Same—Cases Questioned and Distinguished.**

Galveston, H. & S. A. Ry. Co. v. Hanway, 57 S. W., 697, and Galveston, H. & S. A. Ry. Co. v. Scott, 18 Texas Civ. App., 321, questioned and distinguished.

Appeal from the District Court of Bosque County. Tried below before Hon. O. L. Lockett.

*Prendergast & Williamson,* for appellant.

*J. A. Kibler* and *Cureton & Cureton,* for appellee.

CONNER, CHIEF JUSTICE.—Appellant sued the appellee company to recover damages for the loss of an eye caused by the alleged negligence of Doctor S. Webb, the chief surgeon of appellee's hospital department at Walnut Springs. The defense was that the department was conducted without profit and as a charity. After the introduction of the evidence the jury were peremptorily charged in appellee's favor, and from the verdict and judgment in accord with such instruction this appeal has been prosecuted.

The action of the court is not defended on the theory that the evidence did not raise the issue of negligence on Doctor Webb's part, so that there remains for our determination the single vital question of whether the court was justified in giving the peremptory instruction to find for appellee on the ground that the evidence conclusively showed that appellee, in the undertaking of its hospital and treatment of sick and injured employes, was engaged in a charity. Appellee affirms that it was, and that therefore it is liable only for negligence in the employment of the surgeon. This appellant denies.

The evidence relevant to the question is to the effect that appellant, in April, 1907, had been employed by the appellee company, and was located at Walnut Springs; that as such employe he was engaged as a boiler-maker, receiving pay at the rate of thirty-eight cents an hour for the time employed, working ten hours a day; that the wages of appellee's employes were paid monthly, there being deducted out of each month's wages the sum of fifty cents for medical treatment at the hospital. Appellant thus states it: "Each and every month we were paid by the company our full month's pay, with the exception of fifty cents, which was deducted by the railroad company for medical treatment at the hospital. The money was not turned over to us to pay into the hospital fund, but the company in the first place deducted the fifty cents from our salary or from our pay check, and for this fifty cents per month the company was to give its employes medical treatment in its hospital. Other than this fifty cents per month no further charge was to be made for medical treatment at this hospital or by the company physician." It was otherwise shown that the appellee was a railroad company operating a line of railroad from Waco to Walnut Springs and other places; that appellant was injured and treated by Doctor Webb, who had been employed and was acting in accordance with a written contract whereby Doctor Webb agreed to act as chief surgeon of the appellee company, and as such to establish and maintain at Walnut Springs "an adequate and suitable hospital" at his own expense for the treatment of all employes of appellee who were "entitled to hospital privileges" as provided in the contract, and to furnish all instruments, devices, appliances, medicines and other necessaries, "for the proper treatment of all such employes, and to treat such employes who were entitled to hospital privileges under this contract, or the rules and regulations" of appellee governing in the matter. In consideration of which appellee agreed "to collect from all of its white employes, except its general officers, the sum of fifty cents per month as hospital fees," and to deliver the same to Doctor Webb, as compensation for his services, etc. The contract further provided that Doctor Webb should appoint local surgeons at all important towns on the line

of appellee's railway, and that such local surgeons might be called by appellee "to treat in cases of emergency any employe entitled to hospital privileges," and that the fees of such local surgeons for such services should be deducted by appellee from the hospital fund provided for. Appellee also agreed, as part compensation to all local surgeons appointed under the contract, to furnish them annual transportation over its line of road without cost to Doctor Webb. The contract provided that it should "continue in force for a term of five years" from its date, "subject, however, to be terminated by either party hereto by giving written notice of sixty days to the other party of his intention so to do." Mr. Hamilton, appellee's vice-president and general manager, testified that the average number of men employed by the company during the year 1906 was about seven hundred and twenty-three; for 1907, about nine hundred and eighty; that during the year 1907 there was received from the employes as hospital fees four thousand four hundred and forty-five dollars; that the money is received by the defendant company and in the course of business deposited in the First National Bank of Waco, and the payments of the pay-roll and the payments to the chief surgeon are made by checks on the First National Bank; that the deduction from the wages of the employes is sent to the chief surgeon at the same time the employes are paid. There was also evidence to the effect that Doctor Webb was regarded as a competent, careful physician, and that appellee was without negligence in his employment.

Appellee relies, in support of the court's action in giving the peremptory instruction, upon the case of the Galveston, H. & S. A. Ry. Co. v. Hanway, 57 S. W., 697, by the Court of Civil Appeals for the Fourth District, and the case of the same railway company versus Scott, by the same court, in the 18 Texas Civ. App., 321; but if these cases are subject to the construction given them by appellee, we feel constrained to differ from them. We feel no inclination to disagree with the great weight of authority to the effect that, where a railroad company or person undertakes as a pure charity to furnish medical treatment to a sick or injured person, the duty of such company or person only requires the exercise of due care in the employment of a prudent and careful physician, and that such company or person can not be made liable beyond this for negligence on the part of the physician, and the case of Galveston, H. & S. A. Ry. v. Scott, 18 Texas Civ. App., 321, may be said to fall fairly within that rule. The case of Railway v. Hanway, above cited, however, seems more clearly to support appellee's position, and we do not know that we should undertake to distinguish it from the case now before us, save that it does not very clearly appear from the report of the case that the railway company entered into any undertaking with its employes to treat them for the monthly deductions from their wages, as we think the evidence in the case before us tends to show. But whether in this respect the cases are distinguishable or not, it is to be noted that the Supreme Court was apparently careful not to approve the Hanway case when called upon to review it, as will appear from the report in the 94 Texas, 76, and we therefore feel less hesitation in following our own views.

In the case of the Texas & Pacific Coal Co. v. Connaughten, by this court, reported in the 20 Texas Civ. App., 642, the company employed and paid physicians and undertook to treat its employes when sick or injured, deducting, as here, fifty cents per month from each employe's wages. The employes, as here, had no interest in the fund thus raised, nor in its distribution, and it was held that the engagement of the company was not a charity, and that it was liable for the negligence of its physician. It is true that it was there shown that after the payment of all hospital expenses there was a balance of several thousand dollars arising from the deduction made from the wages of the employes, which went to the credit of the company, and in this respect that case is distinguishable from the Hanway case, as clearly pointed out by the Supreme Court in the 94 Texas, 76, above cited. But notwithstanding this distinction, and notwithstanding the fact that in the case now before us, it appears that all deductions from the wages of employes by the terms of the contract with Doctor Webb are to be applied in the payment for the services of Doctor Webb as chief surgeon, and of local surgeons, it seems to us that it is a misnomer to designate as a pure charity the conduct of appellee's hospital department. The evidence certainly tends to show that the hospital was conducted as a distinct department of appellee's business as a carrier; that it distinctly agreed with the employes, including appellant, for the sum of fifty cents per month to be deducted out of the wages due such employes, to furnish them medical and surgical treatment in case of sickness or injury during employment. It does not appear that the employes were permitted to have any control whatever over the fund thus raised or in the employment of the chief surgeon or other attendants, nor did they have voice otherwise in the distribution of the fund so contributed. While it appeared that during the life of the present contract with Doctor Webb all proceeds of the fund are to be devoted to the payment of his services and the services of his assistants, neither the contract nor appellee's general plan in the management of the department furnishes any evidence that it is thus always to be continued, or that in event of a future contract whereby the company should be able to secure the services of a sufficient number of physicians and surgeons to conduct its hospital department for a less sum than should be derived from deductions made from the wages of its employes, the excess should belong to the employes rather than to the appellee company. By the terms of the agreement between the company and its employes, as the evidence tends to show, the deductions were at all events to be made and at all events went to the credit of appellee's general fund in the bank, and in the very contract made with Doctor Webb appellee recognizes that certain of its employes, who include appellant, were "entitled" to treatment. If so entitled by virtue of an "understanding" or agreement on appellee's part with its said employes in consideration of the monthly deductions from their wages, as appellant's evidence at least tends to show, then appellee can not escape from its obligation to the employes to furnish suitable medical and surgical services, in event of their sickness or injury, whatever might be the state of the accumulated fund. The fact that it does not appear, as in the Connaughten case, that there is under the contract with

Doctor Webb a distinct pecuniary profit in the conduct of the hospital department, should not, it seems to us, be conclusive. As an incident to its main business it may be deemed to be otherwise beneficial and profitable. We would feel a hesitancy in saying that as so incidental to its business as a railway carrier, it is outside of the scope of its corporate powers to maintain a hospital department. Aside from charitable purposes, for which railway companies are not organized, it may be said to be in the pecuniary interest of such a company to maintain a state of health and capability among its employes as instrumentalities of its business. Why should it be said that this is in no sense of profit to appellee? True, perhaps, no direct pecuniary benefit is received, but the same may be said to be the case in the conduct of its machine shops and other departments where its insensate physical properties are repaired when injured. At least it seems to us that it was for the jury and not the court to say from all the circumstances, including its general plan, whether appellee's hospital department was conducted as a mere charity and not for profit.

While we are aware that authorities may be found of a contrary tendency, among which may be noted the case of Union Pac. Ry. Co. v. Artist, by the Circuit Court of the United States for the District of Wyoming, 60 Fed. Rep., 365, we are nevertheless not entirely without authority in general support of the views we have expressed. Thus, in the case of Sawdey v. Spokane Falls & N. Ry. Co. by the Supreme Court of Washington, reported in the 70 Pac., 972, where a hospital fund was provided, as here, from monthly deductions of the wages of the railway employes, it was said that if the respondent (the railway company) "did contract, for a consideration, to treat its employes for any injury they might receive while in its employ, it is liable for the malpractice of the surgeon employed to treat the appellant; and this question, as we say, should have been submitted to the jury." We approve the quotation as applicable here, and while it has been said that charity "covereth a multitude of sins," we do not think this mantle should be used to hide the wrongs, if any, of which appellant complains, if in fact committed under the circumstances and with agreement, as alleged by him. See, also, Glavin v. Rhode Island Hospital, 34 Am. Rep., 675; Gitzhoffen v. Sisters of Holy Cross Hospital Ass'n, by the Supreme Court of Utah, 88 Pac., 691; Richardson v. Carbon Hill Coal Co., 20 L. R. A., 338.

We conclude that the court erred in giving the peremptory instruction, and that the judgment should be reversed and the cause remanded for trial in accordance with the views herein expressed.

*Reversed and remanded.*

DUNKLIN, ASSOCIATE JUSTICE, *dissenting.*—I agree that the judgment should be reversed and the cause remanded, but can not assent to the full scope of the opinion of the majority.

If plaintiff is entitled to recover, it must be by virtue of the contract either express or implied, under which the deductions of fifty cents per month from his wages were made, and this contract should be interpreted by the rules applicable to other contracts of like character. If it was the undertaking by and between plaintiff and defend-

ant that in consideration of such deductions from his earnings the defendant would treat him for any injuries he might receive while engaged in defendant's service, then the surgeon employed by defendant would be its servant, and defendant would be liable for damages resulting to plaintiff through the negligence of the surgeon in such treatment. Plaintiff in effect testified that such was the contract, and in view of his testimony, and other circumstances in evidence, I think it was error for the trial court to instruct a verdict in defendant's favor, as that issue, like any other controverted issue of fact, should have been submitted for determination by the jury. Likewise, I believe defendant would be liable at all events for any negligence of the surgeon in treating plaintiff, if it realized a profit from the total deductions for the hospital fund, as was held by this court in Texas & Pac. Coal Co. v. Connaughten, 20 Texas Civ. App., 642; or if the plan established for treatment of such employes for injuries was designed by appellee for the purpose of realizing therefrom any character of profit to the railway company. But if the undertaking by the railway company to make these deductions from the amounts due its employes and to employ a surgeon to treat them was not for the purpose of realizing a profit to the company, but was for the sole use and benefit of the employes, and if no express contract was made between plaintiff and defendant in relation to his treatment in case he was injured in defendant's service, and the defendant realized no profit from the fund arising from such deductions, then I think the extent of duty owing by it to its employes would be to exercise ordinary care to preserve such fund and to select a competent and suitable surgeon. In that event the undertaking of the company would be a gratuity, and if it exercised ordinary care in selecting and retaining a surgeon it should not be held liable for his negligence. (Galveston, H. & S. A. Ry. v. Hanway, 57 S. W., 697; Galveston, H. & S. A. Ry. v. Scott, 18 Texas Civ. App., 321; Southern Pac. Co. v. Mauldin, 19 Texas Civ. App., 166; Union Pacific Ry. v. Artist, 60 Fed., 365; Ohio & M. Ry. v. Early, 40 N. E., 257; Eighmy v. Union Pac. Ry., 61 N. W., 1056; Pittsburg, C. C. & St. L. Ry. v. Sullivan, 40 N. E., 138; Richardson v. Carbon Hill Coal Co., 39 Pac., 95, 26 Cyc., 1082, and cases cited; also cases cited in 34 Cent. Dig., columns 611, 612 and 613.) Such benefits as may be supposed to accrue directly to defendant from the maintenance of the hospital, and not out of the hospital fund itself, I believe could not constitute of themselves pecuniary profits, and thereby furnish a basis for holding, upon the authority of Texas & Pac. Coal Co. v. Connaughten, *supra,* that Doctor Webb was defendant's servant, and that defendant is liable for his malpractice if, as a matter of fact, such benefits formed no part of the consideration which induced appellee to establish its said plan for hospital treatment of its employes. Fire Ins. Co. v. Wickham, 141 U. S., 564, 35 L. ed., 867.

If the contract between defendant and its employes was of the character last above indicated, the fact that there was not a further agreement for the return of any funds not expended, in the event of a termination of the contract, I think, would make no difference, as equity would supply the omission and vest title to the unused portion of the

fund in the employes. It might be difficult to determine the relative interests of the employes in the fund, but clearly it would not be the property of the defendant. And the fact that the defendant deposited the hospital fund to its own credit prior to its payment to the surgeon, and the further fact that under the arrangement between defendant and its employes the former had exclusive authority to select a surgeon, are not inconsistent with defendant's contention that the authority so to do was given it under the contract with its employes, and that its undertaking was to act in those matters solely as a trustee or agent for those contributing to the hospital fund.

Writ of error granted; reversed, and judgment of District Court affirmed.