## 9821

### OWENS v. ATLANTIC COAST LUMBER CORP.

(94 S. E. 15.)

1. JUDGMENT—PLEADINGS—DEMURRER TO COMPLAINT—DISMISSAL.—When a demurrer to a complaint is sustained, the complaint should not ordinarily be dismissed if the omission can be supplied by amendment, but where it appears affirmatively that plaintiff is not entitled to relief, dismissal on such ground is proper, and is a bar to another action.

2. MASTER AND SERVANT—AGREEMENT FOR MEDICAL ATTENTION.—Where an employer deducted $1 each month, for which he was to furnish a staff of doctors to render medical attention to the employees' families when requested, there was a contract based upon a valuable consideration.

3. MASTER AND SERVANT—AGREEMENT FOR MEDICAL CARE—BREACH—PLEADING.—Allegations that plaintiff was an employee, and went several times to a doctor engaged chiefly to attend to defendant's employees and families, and requested him to attend to his sick wife, and the doctor gave no excuse for not coming, except that he was too busy, were sufficient to show that the doctor knew plaintiff was an employee.

4. MASTER AND SERVANT—AGREEMENT FOR MEDICAL CARE—APPLICATION TO PHYSICIAN—NOTICE TO MASTER.—Where an employer agrees, for consideration, to furnish medical attention to employees' families when requested, a request to a designated doctor by an employee to care for his sick wife was notice to the master of such sickness and need.

5. MASTER AND SERVANT—AGREEMENT FOR MEDICAL ATTENTION—NEGLIGENCE OF PHYSICIAN—LIABILITY OF MASTER.—A master who deducts a specified amount each month in return for medical attention is liable for negligence and malpractice of a physician furnished by

him, as a contractual duty, unless it is shown that he obtained no pecuniary profit.

6. PLEADING—DEMURRER TO COMPLAINT—CONSTRUCTION OF PLEADING.— On demurrer to a complaint, the allegations should be most liberally construed for the plaintiff.

Before SHIPP, J., Georgetown, June, 1916. Reversed.

Action by Julius Owens against the Atlantic Coast Lumber Corporation. From an order sustaining a demurrer to the complaint, plaintiff appeals.

*Mr. Capers G. Barr,* for appellant, cites: *As to construction of pleadings:* 8 S. C. 103; 12 S. C. 1; 29 S. C. 258; 70 S. C. 274; 31 Cyc. 290. *Contractual duty to afford medical treatment:* 98 S. C. 25; 211 Mo. 419; 17 L. R. A. (N. S.) 1167; 124 S. W. 202; 30 L. R. A. (N. S.) 1207; 153 Ind. 119; 58 N. E. 738; 6 Cyc. 900; 9 Cyc. 240; 4 Wheaton 518. *Doctrine of respondeat superior:* 104 S. C. 197.

*Messrs. LeGrand Walker* and *M. W. Pyatt,* for respondent, cite: *The funds collected by employer for medical treatment created a mere trust:* 60 Fed. 365. *Admissions as to legal conclusions:* 104 S. C. 311. *Duty under the trust agreement:* 18 Fed. 224-226; 60 Fed. 367-370; 84 Ohio St. 74; 95 N. E. 509; Ann. Cas. 1912b, 933; 211 N. Y. 125; 52 L. R. A. (N. S.) 506; 36 L. R. A. (N. S.) 51; 49 L. R. A. (N. S.) 801; 45 S. E. 741; 77 S. E. 324; 79 S. E. 941. *Care in selection of physician:* 3 Labatt M. & S. (2d ed.) 1098; 4 Thompson Neg., secs. 4895, 4896.

October 29, 1917.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Plaintiff appeals from an order sustaining a demurrer to his complaint for damages for breach of defendant's contract to provide medical attention to his sick wife, for the lack of which she died.

The complaint alleges that defendant employs a great number of men, and deducts $1 from the monthly wages of each to maintain a staff of two physicians to render medical attention to its employees and their families, when needed and requested; that while he was employed by defendant his wife became ill, and needed medical attention, and he called upon Dr. Brown, one of the physicians regularly employed by defendant, and requested him to give her proper medical attention, which he refused to do, on the pretext of being too busy; that he then tried to get Dr. Sawyer, the other physician so employed, but could not find him; that three or four days later his wife became desperately ill, and, still being unable to find Dr. Sawyer, and being without means to employ another physician, he again applied to Dr. Brown, and begged him to go immediately to see her and give her the attention she needed; that, again, in utter disregard of his rights under the contract, the doctor refused his request, saying he could not risk his automobile on the ferry across Sampit River, which ferry was regularly operated by the county authorities in the transportation of automobiles and other vehicles over the river; that, on account of the failure and refusal of Dr. Brown, the agent appointed by defendant to perform its contract, his wife died from the lack of proper medical attention, and he was damaged in the sum of $10,000.

Defendant demurred to the complaint on numerous grounds. Those of merit may be summarized thus: (1) The default alleged is that of one of the physicians employed by defendant, for whose neglect defendant is not liable, in the absence of allegation of negligence in his selection; (2) it is not alleged that Dr. Brown knew or was informed that plaintiff was an employee of defendant, and, therefore, entitled to the services requested of him; (3) nor, that defendant was notified of Dr. Brown's refusal to respond to plaintiff's request, or his inability to find Dr. Sawyer.

The trial Court held that "the complaint not only failed

to state facts sufficient to constitute a cause of action, but contained affirmative allegations, showing that plaintiff had no cause of action." Therefore the complaint was dismissed.

Ordinarily, when a demurrer is sustained for mere insufficiency, the complaint should not be absolutely dismissed, if the omission can be supplied by amendment, for the latter course saves the delay, trouble and expense of bringing a new action. But, when the complaint shows affirmatively that plaintiff is not entitled to relief in any view of the case, dismissal of the action is proper; and, in such cases, the judgment of dismissal will bar another action for the same cause. *Hodge v. Lumber Corp.,* 90 S. C. 229, 71 S. E. 1009. No doubt the Court would have ordered an amendment, but for the latter part of its conclusion above quoted, and, if that conclusion be sustained, plaintiff is remediless.

Let us inquire, then, whether the complaint does show affirmatively that plaintiff is entitled to no relief. The Court did not point out the allegations leading to that conclusion, but it was rested, no doubt, upon the ground that the delict alleged was that of one of the physicians for whose negligence defendant is not liable, in the absence of allegation of its negligence in his selection.

That was a misconception of plaintiff's case. He does not seek to recover damages for the malpractice, or negligence, or unskillfulness of the physician, in the management of the case after he took charge of it, but for the breach of defendant's contractual duty, in his refusal to render any service at all. The gravamen of the complaint is nonfeasance, not malfeasance. Therefore the interesting question made by the first ground of demurrer, whether defendant would be liable for the malpractice of physicians selected by it with due care, was not at issue.

It is too plain for argument that, under the facts alleged, there was a contract, and that it was based upon valuable consideration. The only real question is: Did plaintiff allege enough to show a breach of that contract by defendant?

From the nature of the case, plaintiff was bound to notify one of the physicians of his wife's need of attention, and, also, of her right to it, by reason of his being an employee, if that fact was unknown to the physician. While there is no direct allegation that Dr. Brown knew that plaintiff was an employee, it is fairly inferable from all the facts alleged that he did, for he did not refuse plaintiff's request on that ground, as he probably would, if he had conceived that plaintiff's wife was not entitled to his services for that reason. The giving of other excuses impliedly excludes that one. At any rate he should not have based his refusal on that ground, keeping it concealed, without inquiring of plaintiff as to the truth of the matter. Besides, it is inferable from all the circumstances that these physicians were engaged chiefly, if not exclusively, to attend to defendant's employees, which was enough to put the doctor upon inquiry which would have disclosed the fact.

Was notice to Dr. Brown, who is admitted by the demurrer to have been the agent appointed by defendant to perform the contract on its part, sufficient notice to defendant? The general rule is that notice to one who has been appointed by the master to perform his duty is notice to the master. It would result in great injustice to allow the master to put forward another to perform a duty imposed upon him by law or contract, and escape the consequences of knowledge of the rights and interests of his servants which he would have gained, if he had performed the duty himself.

So, too, as a general rule, a breach of contract which is due to the failure or inability of a third person with whom the party in default has made contracts to enable him to

perform his contract does not excuse such breach.   3 Page
on Contracts, 2241.   Defendant contracted to provide med-
ical attention to plaintiff's wife.   The doctor was the third
person contracted with by defendant to perform its part of
the contract.   In effect, defendant said to its employees: I
will retain $1 from the monthly wages of each of you, for
which I agree to provide for you and your families the serv-
ices of competent medical men, when needed and requested;
and when you, or any member of your family, needs a phy-
sician, call one of those regularly employed by me for that
purpose, and he will render the needed services.   Clearly,
then, the doctor was defendant's agent for the performance
of its contractual obligation to plaintiff, and notice to him
was notice to defendant, and his failure to render any serv-
ice at all was defendant's failure to perform its contract.

While, in the view taken, the question whether defendant
would be liable for the malpractice of physicians carefully
chosen is not strictly within the issues tendered by the com-
plaint, there is one view of the case in which that
question may become important.   If the deductions
made resulted in direct pecuniary profit to defendant,
then, clearly, it would be responsible for the negligence or
malpractice of the physicians employed even with due care,
on the same principle that a private hospital conducted for
gain, or the physican himself, is made liable.

Nothing appearing to the contrary, the allegation that
defendant exacted and received pay for promised services
warrants an inference, at least *prima facie,* that defendant
received pecuniary profit from the scheme.   Certainly it is
not inferable that it was conducted as a charity, even in part,
for there is no suggestion that defendant contributed or
agreed to contribute anything towards its maintenance, nor
that the whole fund so raised was used in paying for the
services of the physicians, or otherwise for the sole benefit
of the employees.   It was retained in defendant's treasury,
and, if there was any surplus, it inured to the benefit of

defendant. This put upon defendant the burden of show-
ing that it derived no pecuniary gain in the conduct of the
undertaking and administration of the fund to escape the
liability arising from that situation.

Discussing this question, Labatt, in his work on Master
and Servant (volume V, sec. 2005), says that it may present
itself in one or the other of three situations:

"(1) The master may deduct a certain amount from the
wages of his servants, for the purpose of forming a relief
fund, and so administer that fund as to derive a direct pecu-
niary profit from it. The effect of such an arrangement, it
has been held, is to subject the master to the responsibility of
a person who agrees to perform a specific duty for a valu-
able consideration. The conclusion arrived at in this point
of view is that he is absolutely bound to see that the sick or
injured servants whose money he is expending are treated
with proper care, and that this obligation is not discharged,
by merely engaging doctors and surgeons whom he is war-
ranted in believing to be competent. * * *

"(2) The whole cost of medical attendance upon the
servants may be defrayed by the master himself. All the
authorities are agreed that, if he pursues this course, he can-
not be held liable for the negligence of the practitioners
whom he employs, unless he has failed to exercise due care
in selecting them. * * *

"(3) The master may make deductions from the wages
of his servants, and, without deriving any direct pecuniary
profit from the fund thus created, administer it for the bene-
fit of those who fall sick or sustain injury while in his
employment. The decided preponderance of authority is
in favor of the doctrine that, under an arrangement of this
character, he is not accountable for the negligence or unskill-
fulness of physicians or surgeons employed by him, unless
he has failed to exercise due care in selecting them." * * *

Construing the allegations of the complaint most liberally
for plaintiff, as we must on demurrer, they bring his case,

at least *prima facie,* within the first situation described, in which the decided weight of authority and reason holds the master liable for the malpractice or negligence of physicians chosen by him, even with due care; for, in that situation, the master assumes an absolute duty and responsibility to the servant. *American Tin Plate Co. v. Guy,* 25 Ind. App. 588, 58 N. E. 738; *Richardson v. Carbon Hill Coal Co.,* 6 Wash. 52, 32 Pac. 1012, 20 L. R. A. 338; *Sawdey v. Spokane Falls etc. Ry.,* 30 Wash. 349, 70 Pac. 972, 94 Am. St. Rep. 880; *Texas & P. Coal Co. v. Connaughten,* 20 Tex. Civ. App. 642, 50 S. W. 173; *Zumwalt v. Texas C. R. Co.,* 56 Tex. Civ. App. 567, 121 S. W. 1133, 132 S. W. 112; *Nations v. Ludington etc. Lumber Co.,* 133 La. 657, 63 South. 257, 48 L. R. A. (N. S.) 531, Ann. Cas. 1916b, 471; *Phillips v. St. Louis & S. F. R. Co.,* 211 Mo. 419, 111 S. W. 109, 17 L. R. A. (N. S.) 1167, 124 Am. St. Rep. 786, 14 Ann. Cas. 742. In the note to the case last cited, the editor thus states the rule:

"Where such arrangement is substantially a contract, whereby, in consideration of the sums held back from the employee's wages, the employer undertakes to provide him with medical attendance, etc., the employer seems to be regarded as liable for any injury resulting from want of care or improper treatment."

The facts of the case quoted from by the Chief Justice bring them under the second or third situation stated by Labatt, and distinguished them from this case. Besides, as Labatt points out, on page 6220, the principle of the Artist. case, 60 Fed. 367, 9 C. C. A. 14, 23 L. R. A. 581, is contrary to the view adopted by the Courts of Massachusetts, Missouri and Texas, which is more consonant with reason and justice.

The order appealed from is reversed.

MESSRS. JUSTICES WATTS, FRASER and GAGE concur in the opinion of the Court.

Mr. Chief Justice Gary, *dissenting.* This is an appeal from an order sustaining a demurrer to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action. The action is for damages alleged to have been sustained by the plaintiff, through the wrongful acts of the defendant, arising out of the failure on the part of the physicians employed by it to render proper medical assistance to plaintiff's wife, who died shortly thereafter.

The question whether the defendant is liable for failure of the physicians to render proper medical attention to the plaintiff's wife, is dependent upon the construction of the contract between the plaintiff and the defendant, as alleged in the complaint, the third paragraph of which is as follows:

"That the said defendant now maintains, and was maintaining at the times hereinafter mentioned, a medical staff or corps, consisting at the times hereinafter mentioned, of two physicians, for the alleged purpose of sustaining the health of its employees and their families, and that the services, advice and attention of said physicians, were alleged to be at the disposal of its said employees and families, when needed."

This, impliedly, means that the defendant, as a part of the contract, agreed to keep in his employment a medical staff or corps of physicians, for the purpose of administering medical aid to the employees and their families; the services of said physicians being at the disposal of said employees and their families, whenever deemed necessary.

There are no allegations in the complaint showing an express agreement on the part of the defendant to be responsible for the failure of the physicians to render proper medical assistance to the employees or their families; nor are there any allegations, from which the law would imply an agreement to become liable for the default of the physicians employed by the defendant.

The doctrine of *respondeat superior* is not applicable to the facts of this case, for the reason that the physicians were

not agents of the defendant. In order for the principle of *respondeat superior* to be applicable, it is necessary for the employee causing the injury, to be under the direction and control of the master. The technical knowledge and scientific skill of physicians, cause them to be placed in a class different from the ordinary employee. A master is liable for the acts of his agent, on the theory that he controls and directs the work of the agent.

But even if the defendant had undertaken to enter into a contract that the physicians employed by him should practice upon the employees and their families in such manner as might meet with its approval, it would be against public policy. The physicians were independent contractors.

In 16 Enc. of Law, 192, the general rule as to the liability of employer for the acts of the contractor is thus stated:

"Since the relation between parties which renders one liable to third persons, for the acts or negligence of the other, must be that of superior and subordinate, and is based on the control which the superior has the right to exercise over the acts of the substitute, in the performance of his duties, it follows that an employer is not so liable, for the acts of an independent contractor, who is never subject to such control, nor is he liable for the acts of the employees and servants of such independent contractor. That this is the law is now generally conceded, both in England and in the United States, and the few early decisions in both countries adopting a different view have been disapproved, expressly or impliedly, by all the Courts in which the question has arisen.

"A master is liable for the negligence of his servant engaged in his business, because he selects his servant and controls him. We should not be answerable for acts done by the servant of another, or by that other who is not subject to his control. Therefore, the owner of property, fixed or movable, for whose benefit a work about such property is to be accomplished, is not held answerable for the negligence

of an independent contractor, to whom he has committed the work, to be done without his control in its progress." *Conlin v. Charleston,* 15 Rich. 201; *Rogers v. Ry.,* 31 S. C. 378, 9 S. E. 1059.

Although it may not be necessary, we shall discuss this question at greater length, as there is no decision in this State directly in point, and various reasons are assigned by the Courts elsewhere, sustaining our conclusion. In the case of *Union Pacific Ry. Co. v. Artist,* 60 Fed. 367, 9 C. C. A. 17, 23 L. R. A. 581, the Court states the following reasons why the doctrine of *respondeat superior* does not render the employer liable, to wit:

"Because, by fair implication, he simply undertakes to exercise ordinary care in the selection of physicians and attendants, who are reasonably competent and skillful, and does not agree to become personally responsible for their negligence or mistakes. * * * Moreover, the corporations or individuals that administer (to) such trusts must, after all, leave the treatment of the patients to the superior knowledge and skill of the physicians. They cannot direct the latter, as the master may ordinarily direct the servant, what to do, and how to do it. If they did so, the physicians would be bound to exercise their own superior skill and better judgment, and to disobey their employers, if in their opinion, the welfare of the servants required it. * * * The rule is that those who furnish hospital accommodations and medical attendance, not for the purpose of making profit thereby, but out of charity, or in the course of the administration of a charitable enterprise, are not liable for the malpractice of the physicians or the negligence of the attendants they employ, but are responsible only for their own want of ordinary care in selecting them.

"The care of persons suffering from wounds, bruises or illness, is a matter altogether distinct from the transportation of persons and property. To provide for the needs of such, we have the learned professions of physicians and sur-

geons. The law requires that those who assume to practice medicine and surgery, shall possess certain qualifications of skill; shall have received education and training, fitting them for their calling. Can a railroad company, then, be held liable for the mistakes of physicians whom it may call to care for its passengers? In the treatment of an injured brakeman, should the managers of the railroad comply with the directions of the surgeons who are called to attend him, or should they assume superior knowledge, with reference to his proper treatment, and act in accordance with their own judgment?" *Atchison etc. R. R. v. Zeiler,* 54 Kan. 340, 38 Pac. 282.

"It would be absurd to insist that not only this selection should be prudent, but that the company should guarantee that the surgeon selected would make no mistake and be guilty of no negligence. The very fact that there was required of the surgeons, in the line of their duties, the possession of a superior degree of skill and knowledge of medicine, precludes the possibility that the officers or employees of the railroad company should have exercised a supervisory control and direction of the time when, and the mode in which, the necessary surgical operations should be performed." *Chicago, B. & Q. R. R. v. Howard,* 45 Neb. 570, 63 N. W. 872.

In note 4 to The Kenilworth, 144 Fed. 376, 75 C. C. A. 314, reported in 4 L. R. A. (N. S.) 49, it is said:

"One of the considerations to which the nonliability of the master has been referred is that persons engaged in business enterprises cannot be supposed to possess the technical skill required for the proper treatment of the sick and injured, and must perforce rely on practitioners who possess the appropriate qualifications. * * *

"But it is manifest that, unless the practitioners retained by a master are independent contractors, the mere fact that the work required was such as to demand the exercise of special skill, would not necessarily involve, as a corollary,

the master's exemption from liability for their negligence. In this point of view, therefore, it would seem to be preferable to rely directly upon the primary conception, and treat the exemption as an appropriate result of the fact that, as has been categorically laid down in one case, the relation of master and servant does not exist between a master and a physician or surgeon engaged by him to attend on his servants.

"It is said that this relation is not one of master and servant, but that the physician occupies the position, so to speak, of an independent contractor, following a separate calling, liable, of course, for his own wrongs to the patient whom he undertakes to serve, but involving the hospital in no liability, if due care has been taken in his selection."

Note to the case of *Schloendorff v. Hospital,* 211 N. Y. 125, 105 N. E. 92, reported in 52 L. R. A. (N. S.) 505, Ann. Cas. 1915c, 581:

"It is true that the relation of master and servant, principal and agent, has no application as between a corporation and a surgeon employed by it to render professional services to its sick or injured employees, and that the doctrine of *respondeat superior* has no application; but this rule is subject to the important proviso, applicable to the case before us, that there is a liability on the employer to the servant unless in pursuance of its undertaking it exercises reasonable care in selecting one having the knowledge and skill ordinarily possessed by other members of his profession in the same community. 4 Thompson Neg., sec. 3841." *Neil v. Lumber Co.,* 71 W. Va. 708, 77 S. E. 324.

"It is not the law that one who contracts to furnish or pay for medical (services) or surgical aid and attention to another is liable at all events for the mistakes or incompetency of the physician or surgeon he may employ for that purpose. There must be some neglect or carelessness or misconduct on his part, in the performance of his obligations arising under such contract. If he act in good faith and

with reasonable care in the selection of the physician or surgeon, and has no knowledge of the incompetency or lack of skill or want of ability on the part of the person employed, but selects one of good standing in his profession, one authorized under the laws of this State to practice medicine and surgery, he has filled the full measure of his contract and cannot be held liable in damages for any want of skill or malpractice on the part of the physician or surgeon employed." *Youngstown etc. v. Kessler,* 84 Ohio St. 74, 95 N. E. 509, 36 L. R. A. (N. S.) 50, Ann. Cas. 1912b, 933.

The judgment should be affirmed with leave to the plaintiff to amend his complaint, as he may be advised, within 20 days after the remittitur is sent down.

For these reasons I dissent.