W. A. POLING v. SAN ANTONIO & ARANSAS PASS RAILWAY
COMPANY.

Decided May 20, 1903.

1.—Master and Servant—Railroad Hospital Service—Incompetent Physician—Evidence.

Where, in an action by an employe against a railroad for damages caused by an incompetent physician employed in the company's hospital, the physician had testified that he had no diploma, it was harmless error for the court to exclude evidence that such physician was not a graduate of a medical college, because he had no diploma.

2.—Same—Certificate—Evidence.

Where such physician had been granted a certificate to practice medicine by the proper board of medical examiners, evidence was not admissible to show that he had not been properly examined by the board.

3.—Same—Opinion.

It was not competent for another physician who had never examined the company's doctor, but had practiced medicine in the same town with him for eight years, to testify that he did not consider him well versed in the elementary branches of medicine.

4.—Same—Hearsay.

An account of the proceedings of the board of medical examiners, published in a newspaper in the county of the physician's residence, was not admissible, it not being shown to have ever been brought to the attention of the defendant company.

5.—Same—License to Practice—Record.

The company's physician having obtained a certificate from the board of medical examiners and deposited it for record with the clerk of the county and district court, this pretermitted any issue as to his being a licensed physician, although the clerk wrongly recorded it with the county court records, instead of those of the district court.

6.—Same—Hospital Fund—Ordinary Care.

Where a railroad retains a certain sum monthly from the wages of its employes for the purpose of supporting a hospital for their benefit, but derives no profit therefrom, it is required to use only ordinary care in selecting a physician for such hospital, and where it uses such care it is not liable to an employe for injuries to him caused by such physician's improper treatment.

Appeal from the District Court of Nueces. Tried below before Hon. Stanley Welch.

*J. C. Scott,* for appellant.

*Stayton & Berry,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by appellant against appellee to recover $20,000 damages for the loss of sight in his left eye, alleged to have been occasioned by the negligence of the defendant company. The substance of the allegations of plaintiff's cause of action is that on or about April 17, 1897, while he was in the employ of the defendant as its station agent at Kerrville, he was, against his will, required by the company to sign an agreement, the purport of

which was to authorize the defendant to deduct from his wages 50 cents per month to be appropriated by the company as a hospital fee to be used in the care and treatment of its servants for personal injuries or sickness incurred by them while in its service. That at or about the time stated, defendant had in its service, as physician at Kerrville, one E. Palmer, whose duty it then was to furnish medical attention to plaintiff as an employe of the company, and its other employes when such attention was needed; that Palmer was not a competent physician, or legally qualified as such to practice medicine; that this was known to the defendant when it employed him as a physician and retained him in its service with such knowledge of his incompetency; that on or about the date aforesaid some foreign substance got in plaintiff's eye, and he applied to Palmer, as the company's physician, to remove the substance, and treat his eye for the injuries inflicted by it, and that Palmer, on account of his incompetency, so negligently treated his eye as to cause plaintiff the loss of its sight therefrom. It was also alleged that the defendant exercised no care in the selection of Palmer as its physician, and negligently and carelessly retained him in its service as such after knowledge had been brought hame to it of his incompetency.

The defendant, after answering by a general denial, plead that plaintiff was not treated for his injured eye by Palmer, as the physician of the company, but that plaintiff employed him to minister such treatment as his private physician; that when plaintiff applied to Palmer for treatment, he, having lived in Kerrville for a long time where Palmer was engaged in the general practice of medicine, knew, if Palmer was incompetent, of his incompetency to practice his profession; and that the defendant exercised ordinary care in employing Palmer as physician in its service, and to ascertain his efficiency during the time of his employment to practice medicine, and that if plaintiff was injured by the negligence of Palmer, the company was not liable for the consequences of such negligence.

The case was tried before a jury, and the trial resulted in a verdict and judgment for the defendant, from which the plaintiff has appealed.

The evidence developed upon the trial shows the following facts: That, as alleged by the plaintiff, the defendant exacted from him and its other employes 50 cents each per month, to be taken from their wages, as a hospital fee to be used in the treatment of the company's servants for sickness and personal injuries received while in its employment. This fee, however, was not exacted or appropriated by the company for its profit, but simply for the benefit of its employes from whom it was collected. The fund realized from its collection was not sufficient to defray the expenses for hospital and physician's services for which it was designed, and the deficit was made up and paid by the company itself. At the time plaintiff alleges the injury to his eye, Dr. Palmer was in the employment of the defendant at Kerrville as its physician

for the treatment of its employes in sickness and for personal injuries. Before employing him the company, through its medical director, made diligent inquiry of responsible and intelligent citizens in and around Kerrville, where Palmer had been engaged in the practice of medicine for nearly twenty years, as to his competency. The information received by the company in response to such inquiries was that Palmer was a competent physician and skilled surgeon, and fully capacitated to discharge the duties for which he was employed by the company. His general reputation in and around Kerrville as a competent physician and surgeon was good, and such reputation continued until this case was tried. Palmer, according to his own testimony, never had a diploma to practice medicine. On the 15th of August, 1892, the board of medical examiners of the Thirty-eighth judicial district of the State of Texas issued Palmer a certificate that he was duly qualified to practice as a physician and surgeon in accordance with the laws of the State of Texas. This certificate was signed by the president and secretary of the board, and on the 7th day of November, 1892, was handed by Palmer to A. E. McFarland, who, the testimony shows, was at that time the clerk of the district and county courts of Kerr County, for record, and was on that day filed by him for record, but by mistake, instead of being recorded in the office of the district clerk, was recorded in that of the county clerk, and was never recorded in the office of the district clerk until August 27, 1900.

On or about April 17, 1897, the plaintiff got some foreign substance in his eye, and applied to Dr. Palmer to remove it. Upon examination the doctor found nothing in his eye, but discovered its lid was granulated, and treated it for the granulation. His treatment, according to the testimony of the physicians, was such as is ordinarily given by competent physicians in such cases. However, Dr. Palmer, finding in the progress of his treatment that the disease of the lid was more aggravated than he thought upon his first examination, sent plaintiff to San Antonio to a skilled oculist for examination and treatment. The diagnosis of the oculist in San Antonio was the same as Dr. Palmer's, and he pronounced the treatment that had been given by Palmer as the proper remedy to be administered for the disease, and sent the patient back to Kerrville, telling him that Dr. Palmer could treat him as well as he could. It finally developed upon further examination and treatment that plaintiff's eyeball was injured in some way to the extent that the sight in his left eye was practically lost.

As to whether Dr. Palmer treated plaintiff in his capacity as a physician and surgeon for the defendant or as plaintiff's private physician, the testimony is conflicting; and upon this issue we conclude as a fact that the treatment given was not as the physician of the company, but as plaintiff's private physician. We also conclude that the defendant used ordinary care in the selection of Dr. Palmer as its physician and surgeon; that he was a competent physician and surgeon, and fully

qualified to discharge the duties of his employment; and that the loss of sight in plaintiff's eye was not caused either by the negligence of defendant or of Dr. Palmer.

*Conclusions of Law.*—1. The plaintiff was not prejudiced by the refusal of the court to permit the witness Everett's testimony, that "E. Palmer was not a graduate of a medical college because he did not possess a diploma," to be introduced in evidence, for the reason that Dr. Palmer himself testified that he had no diploma. The testimony of Palmer settled the fact that he had no diploma, and the additional reason given by the witness in the answer for his conclusion that Dr. Palmer had no diploma, is immaterial.

2. As to whether Dr. Palmer stood an examination before the board of medical examiners that issued him the certificate referred to authorizing him to practice medicine, is immaterial to any issue in this case. The certificate was issued to him, and as to whether the board acted irregularly in its issuance can not be made a subject of inquiry in this case. Therefore the trial court did not err in excluding the evidence offered by the plaintiff to prove that Dr. Palmer never stood an examination for license to practice medicine in Texas.

3. This answer of the witness Everett,—"I practiced medicine in the same town Dr. Palmer did nearly eight years, and did not consider him well versed in the elementary branches of medicine; but having never examined said Palmer, it is impossible for me to say just to what extent is his knowledge of medicine, and his ability, qualification and fitness for the practice of medicine in its various branches, i. e., anatomy, physiology, pathological anatomy, pathology, surgery, practice of medicine, etc.,"—is immaterial upon the issue as to whether the defendant exercised ordinary care in employing Palmer as its physician, for according to the answer itself, the witness shows that it was impossible for him to state the extent of Palmer's knowledge of medicine. That he did not consider Palmer well versed in the elementary branches of the profession is shown by the answer to be simply the opinion of the witness without knowledge of facts for its basis.

4. We can not perceive upon what principle it can be contended that the publication in the Kerrville News, a newspaper published and circulated in Kerr County, Texas, of date February 1, 1894, of the proceedings of the medical board of examiners of the Thirty-eighth judicial district, could be admitted in evidence in this case. Such publication was purely hearsay, and there was no evidence introduced or offered tending even to show that the defendant company had any knowledge of it, either at the time or after it employed Dr. Palmer as its physician.

5. As we have before intimated, the certificate issued by the authorized board of medical examiners and deposited for record on the 7th day of November, 1892, with the county and district clerk of Kerr County, was sufficient in law to authorize him to practice medicine in

that county and pretermitted any issue as to his being a licensed physician under the laws of this State, and the court did not err in instructing the jury to that effect. Besides, from the nature and character of this suit, and the evidence developed, it may be questioned as to whether or not Palmer was a licensed physician under the laws of Texas could be made an issue in this case.

6. The court did not err in either of these paragraphs of its charge:

"In this case the plaintiff has failed to show that the defendant has retained for its own benefit and profit the hospital fund of 50 cents per month from each of its employes, but all the evidence shows that the defendant company derives no profit from the retention of said hospital fund from its employes, nor has it designed same for profit, and that therefore in this case the only measure of duty owing to the said plaintiff by the said defendant, arising from its agreement to furnish him with medical attention when needed, was the use of ordinary care to select, employ and retain a competent physician as its local physician at the town of Kerrville for the treatment of plaintiff and the other employes of defendant in case of sickness or injury."

"If, on the contrary, you believe that the defendant, the San Antonio & Aransas Pass Railway Company, selected, employed and retained Dr. E. E. Palmer as its railway physician at Kerrville, and that in selecting, employing and retaining him it used ordinary care, that is, the care that an ordinarily prudent person would have used to select a competent physician, you will find a verdict for the defendant, and whether the said Dr. Palmer treated the eye of plaintiff properly or not." Railway Co. v. Scott, 18 Texas Civ. App., 321; Southern Pacific Co. v. Mauldin, 19 Texas Civ. App., 166; Railway Co. v. Early, 28 Law. Rep. Ann., 546; Eighny v. Railway Co., 27 Law. Rep. Ann., 296; Railway Co. v. Sullivan, Id., 840; Railway Co. v. Artist, 23 Law. Rep. Ann., 581.

7. The undisputed evidence shows that the defendant did not undertake to furnish and provide plaintiff with medical attention for profit. Therefore the court did not err in refusing to give, at plaintiff's request, special charge number 1 as complained of in his eighth assignment.

8. What we have said in regard to the preceding assignments of error demonstrates that the court did not err in failing to give the other special charges requested by the plaintiff.

9. Our conclusions of fact dispose of the assignment which complains of the insufficiency of the evidence to support the verdict.

There is no error assigned requiring a reversal of the judgment, and it is affirmed.

*Affirmed.*

Writ of error refused.