# CHARLESTON

NEIL v. FLYNN LUMBER CO.

Submited March 7, 1911.    Decided February 4, 1913.

1. MASTER AND SERVANT—*Contract of Employment—Furnishing Medical Services.*

    Where an incorporated lumber company agrees with an employee, in consideration of monthly deducations therefor from his wages, to furnish a competent and skilled physician to attend to and treat him for any sickness or accident occurring while in its service, it is bound thereby to select and retain for that purpose a physician having the knowledge and skill ordinarily possessed by other members of his profession in the same community. (p. 711).

2. SAME—*Medical Services—Contract to Provide—Injuries to Servant—Malpractice—Scope of Liability.*

    Should the company fail to perform the duty so imposed, and by reason thereof the employee is injured, it is liable in damages to the servant, to the same extent as the physician himself would be were he sued for the injury. (p. 711).

3. SAME—*Injuries to Servant—Medical Attention—Injuries— Action Against Master—Nature and Form.*

    In such case, the injured employee may maintain against his employer either *assumpsit* upon the contract or trespass on the case for the tort. (p. 713).

4. CORPORATIONS—*Contract—Medical Attention to Employees.*

    The contract stated is not *ultra vires.* (p. 713).

Error to Cicuit Court, Nicholas County.

Action by Orville Neil against the Flynn Lumber Company. Judgment for defendant, and plaintiff brings error.

*Reversed and Remanded.*

*G. G. Duff* and *W. G. Brown,* for plaintiff in error.

LYNCH, JUDGE:

The plaintiff was injured while in the service of the defendant. He seeks to recover damages for the injury, a broken leg, thus sustained. The first count of the declaration alleges an express contract whereby the company, in consideration of monthly deductions of fifty cents from plaintiff's wages, undertook and agreed in event of sickness or accident to furnish for plaintiff's treatment a skillful physician and surgeon; that, in pursuance thereof, but disregarding the undertaking and agreement, it did provide a competent surgeon to adjust and protect the fracture, but wrongfully terminated his services and negligently employed one Samuel Cline to attend and treat the injury; that Cline was in fact not a physician, and had not complied with the laws of the state with reference to licensing persons to practice medicine; that the defendant, well knowing the premises, employed Cline to attend and treat the plaintiff, and falsely represented to him that said Cline was a physician and surgeon in the actual employ of the company; that Cline entered upon and continued the treatment of plaintiff, he having no knowledge that Cline was not a skillful physician and surgeon; that "said Cline so unskillfully and negligently conducted himself, by and through his want of skill and care, that plaintiff's injuries became greatly increased and aggravated in this, that after plaintiff's broken leg had been properly set by a competent physician, but before the bone therein had knitted together, said Cline moved the leg in a careless and unskillful manner from the box and bandages in which it had been properly set and placed, thereby breaking it anew, and permitted it to remain without being properly reset, whereby the bone grew and knit together in an improper position and the leg became shortened, deformed, weakened, and permanently injured."

The second count, though not alleging the successful adjustment of the broken bones by a competent physician, restates the cause of action in terms variant only in slight degree from the first count. It avers that, nevertheless, the defendant, well knowing the premises and that plaintiff required a skillful physician and surgeon to attend and treat him, and wholly disregarding its agreement, neglected and refused to employ a

skillful physician and surgeon to treat him, but did employ one not a physician and surgeon for that purpose, representing to plaintiff that such person was a skillful physician and surgeon and its agent and company doctor, who entered upon and conducted such treatment, resulting. in an aggravation of the injury substantially as charged in the first count.

The defendant demurred to the declaration and each count. The court sustained the demurrer, and gave leave to amend. The plaintiff declined to amend, and thereupon the court entered a *nil capiat* and dismissed the action, "without prejudice to the plaintiff's right to bring any proper action at law upon the demand or cause of action sued upon if he so desires", and awarded costs to the defendant.

The order .filing the demurrer sets out several grounds therefor, most of which are perfunctory and without merit. The declaration does show plaintiff's right to sue, a consideration adequate to sustain it, and liability on the defendant for the injuries alleged; it does not, as claimed, show want of proper parties.

The fifth ground is that the declaration "shows on its face that the suit was not instituted within one year after the committing of the grievance" alleged. The averment is that the defendant "before and at the time of the committing of the grievance   *   *   , towit, on the —— day of August, 1907, and within one year next preceding the institution of this suit * *, was lawfully possessed of a certain saw-mill, timber and logs *   *   and engaged in cutting, hauling and manufacturing said timber and logs   *   *   , and then and there employed said plaintiff to engage in said work   *.   *   , and plaintiff did then engage in said work   *   *   , and while in the discharge of his duties as such employee" one of said logs rolled over him and injured him, breaking his leg. The writ of summons bears date August 15, 1908. So that the declaration does not show the lapse of one year between the date of the injury and the institution of the action. Besides, the injury occured subsequent to the date of plaintiff's employment "on the —— day of August, 1907"; how long after does not appear.

The eighth ground is that the suit was brought for $1,000, and that the summons shows erasures  and mutilation of  the

amount of damages claimed. The summons first appearing in the record is imperfect; it fails to name the plaintiff. Upon *certiorari* the clerk of the circuit court certified to this Court an exact copy, which is in proper form and negatives the statement of any defect. The ninth ground is that the declaration on its face shows contributory negligence. We do not think it does. The tenth ground is that the declaration does not show objection by plaintiff to Cline's treatment. The declaration, taken as a whole, indicates no reason for such objection.

The defendant has not appeared or filed any brief. That part of the order above quoted contains the only suggestion or reason for the action of the circuit court on the demurrer, namely, that the plaintiff elected an improper form of action. Properly, the first inquiry is whether the declaration states a cause of action; and if it does, second, whether trespass on the case is a permissible form. The declaration alleges Cline's incompetency and defendant's knowledge thereof. Upon demurrer these averments are admitted as true. We are of the opinion that the declaration does set out, in apt words, a cause of action.

It is true that the relation of master and servant, principal and agent, has no application as between a corporation and a surgeon employed by it to render professional services to its sick or injured employees, and that the doctrine of *respondeat superior* has no application. But this rule is subject to the important proviso, applicable to the case before us, that there is a liability on the employer to the servant unless in pursuance of its undertaking it exercises reasonable care in selecting one having the knowledge and skill ordinarily possessed by other members of his profession in the same community. 4 Thomp. Neg. §3841. Certainly, where the employer, "in consideration of monthly deductions from the wages of its employees, provides its sick and injured employees with medical or surgical attendance, it is bound to exercise reasonable diligence ,in the selection and retention of its physicians, and is liable for malpractice because of the incompetency of such physicians resulting from the excessive use of intoxicants, narcotics, or other cause". *Id.,* §§3841-3843 ;. *Railroad Co.* v. *Kelly,* 153 Ind. 119, 52 N. E. 152, 54 N. E.

752; 1 Elliott on Railroads, §1388. The last authority says: It is a general rule that if there is no negligence in selecting the surgeon, physician, or other attendants, those who furnish them, or those who maintain and furnish the hospital accommodations out of charity and not for profit, are not liable for the malpractice or negligence of the physician or attendants". Thus, the author negatively admits the liability where, as in this case, the declaration alleges a contract for such employment for hire and reward. *Railroad Co.* v. *Artist,* 60 Fed. 365, 23 L. R. A. 581, says: "If one undertakes to treat such patient for the purpose of making profit thereby, the law implies a contract to treat him carefully and skillfully, and holds him liable for the carelessness of the physician he furnishes". Again, 1 Elliott on Railroads, §1389, tells us: "If a railroad company voluntarily undertakes to care for an injured employee who can not help himself, it may be held liable for negligence in its own treatment of him, or in knowingly or carelessly selecting an incompetent surgeon or physician to treat him"; adding: "This is certainly true where it takes him to a hospital which it maintains with funds deducted from the wages of the injured man and other employees, and if there injured by the negligence of an incompetent physician whom the company has negligently selected to treat him". "An employer who contracts for a consideration to treat employees for injuries received by them while in his employ is liable for the malpractice of the physician employed", unless he has used due care in his employment. *Sawdey* v. *Railroad Co.,* 30 Wash. 349; *Poling* v. *Railroad Co.,* 32 Tex. Civ. App. 487, 75 S. W. 69. A similar principle is declared in *Glavin* v. *Hospital,* 12 R. I. 411, in which the plaintiff sought damages for the negligence of the surgical intern, a house officer of the defendant; also that, although "the attendant, physician and surgeons could not be considered the servants of the hospital, yet the hospital was responsible for the exercise of reasonable care in selecting them. If an incompetent intern was appointed by the negligence of the managers of the hospital, the hospital was responsible for the results of such negligence and of the incompetency of the intern". To the same effect are *Railroad Co.* v. *Earl* (Ind.), 28 L. R. A. 546; *Laubheim* v. *Steamship Co.,* 107 N. Y. 228, 1 Am. St. 815;

*O'Brien* v. *Steamship Co.,* (Mass.) 13 L. R. A. 329; *Railroad Co.* v. *Sullivan,* 141 Ind. 83, 50 Am. St. 313; 26 Cyc. 1082.

The contract averred in the declaration is not *ultra vires.* 10 Cyc. 1143; *Railroad Co.* v. *Rodrigues,* 47 Ill. 188, 95 Am. Dec. 484; Thomp. Corp. §5840; *Railway Co.* v. *McDonald,* 17 Ind. App. 492, 46 N. E. 1022, 60 Am. St. 172. Likewise, "a contract by a coal company for the services of a physician to treat one of its employees injured while working in its mines is not *ultra vires."* *Gibson* v. *Coal Co.,* 151 Ill. App. 424. "The general rule is that where a private corporation has entered into a contract not immoral in itself and not forbidden by any statute, and it has been in good faith fully performed by the other party, the corporation will not be heard on a plea of *ultra vires".* *Railroad Co.* v. *McDonald, supra;* Thomp. Corp. §6026.

*As to the form of action.* It has been held in this state, *Jenkins* v. *Railway Co.,* 61 W. Va. 597, that one may in a proper case elect between *assumpsit* upon contract and trespass on the case for damages resulting from breach of duty to him under contract. In that case there was a contract between a county court and a railroad company, for the mutual advantage of both parties in an effort to prevent the spread of a contagious disease, whereby the county court agreed to maintain a pest house for the care of persons infected, and the carrier to equip a car and transport such persons to the pest house. Plaintiff, being one of the class designated, was injured while being so transported. It was claimed by the railroad company that his remedy was *ex delicto,* not *ex contractu,* and that *assumpsit* was not a proper substitute for case; but this Court held that either would lie.

*Ferrill* v. *Brewis,* 25 Grat. 765, was an action of trespass on the case. Damages were sought for the failure of Brewis to return notes given him for collection. The inquiry was whether *assumpsit* alone was not the proper remedy, as the action sprang out of contract. It was held that for the breach or nonperformance an election was permissible between *assumpsit* and case, citing *Boorman* v. *Brown,* 3 A. & E. 525; *Express Co.* v. *McVeigh,* 20 Grat. 265. The court said: "In all these cases the contract is of course referred to in order to ascertain the rights of the parties and the measure of redress; but the wrong-

NEIL *v.* FLYNN LUMBER Co.     [Feb. 1913.

ful act of the defendant is relied upon as the gravamen of the
action. * * * The case of *Robinson* v. *Threadgill,* 13 Ired. Law
R. 40, is in point, and is almost identical with this. There, as
here, the action was trespass on the case for failure to collect
or return two promissory notes placed in defendant's hands for
collection. It was objected that the plaintiff had mistaken his
remedy; that he ought to have sued in *assumpsit.* Nash, J.,
speaking for the court, said that case was the appropriate rem-
edy. Where the law from a given state of facts raises an obli-
gation to do a particular act, and there is a breach of that obli-
gation and a consequential damage, an action on the case
founded on the tort is proper. Here the law raised an obliga-
tion on the defendant to do a particular act, to-wit, to collect
or return the notes, and he was guilty of a breach of that obliga-
tion. The plaintiff was at liberty to consider the breach of
duty as his gravamen, and case was his appropriate remedy,
though he might have sued in *assumpsit. Govell* v. *Radnage,*
3 East 62; *Samuel* v. *Judin, Ib.* 333; 3 Rob. Prac. 439. * * *
The circumstances which show a breach of duty constituting a
tortious neglect show also a breach of promise implied from the
consideration", citing *Geiston* v. *Burr,* 11 John. 480.

In *Slock* v. *Boston,* 149 Mass. 410, 14 Am. St. 430, the
defendant was under contract to furnish plaintiff water. It
opened the water pipe and left it exposed, so that it froze and
cut off plaintiff's supply, and injuries resulted. It was held
that "he may maintain an action of tort against the city for
damages, and need not rely on his action on his contract, as
the exposure of the supply-pipe is the proximate cause of the
injury". In the opinion it is said: "A mere breach of contract
can not be sued on as a tort, but for tortious acts, independent
of the contract, a man may be sued in tort, though one of the
consequences is a breach of his contract. *Ashley* v. *Root,* 4
Allen 504. Suppose a lessor, who has covenanted to keep the
leased premises in repair should tortiously fire a cannon near
the premises, breaking the windows and otherwise injuring
them. It would not be an answer in an action of tort to set up
that the plaintiff had an action on the covenants of the lease.
He could pursue either remedy. In the case at bar, the tortious
acts of the city had no connection with or reference to its con-

tract. They were independent acts, which gave the plaintiff a right to an action of tort, even if he had (which we need not decide) a concurrent remedy upon his contract".

In a large class of cases, embracing carriers of passengers and goods, telegraph companies, and all contracts of service professional or otherwise, there is a duty implied by law to exercise the commensurate degree of care required, a breach ·of which entails liability either on contract or in tort. In these cases, as in the one at bar, negligence is the proximate cause of injury. In 3 Rob. Prac. 440, the author reviews the cases and deduces this broad general rule: that where a contract creates a duty, and there is a *neglect* to perform that duty, the *nonfeasance* is a tort; that "wherever there is a contract and something to be done in the course of the employment which is the subject of that contract, if there is a breach of duty in the course of that employment, the plaintiff may either recover in ·tort or on contract," citing *Brown* v. *Boorman,* 11 Clark & Fin. 44; *Thorne* v. *Deas,* 4 Johns. 84 (where Judge Kent discusses the whole subject). See also *Express Co.* v. *McVeigh, supra; Steamship Co.* v. *Bank,* 6 How. (U. S.) 344, 410-412.

For reasons assigned, the judgment is reversed, the demurrer overruled, and the case remanded.

*Reversed and Remanded.*