BORGEAS, Respondent, *v.* OREGON SHORT LINE RAILROAD CO. et al., Appellants.

(No. 5,684.)

(Submitted April 24, 1925.  Decided May 18, 1925.)

[236 Pac. 1069.]

*Master and Servant—Railroads—Medical Attendance for Employees—Breach of Contract—Duties and Liabilities of Employer — Duty of Employee — Complaint — Physicians and Surgeons—Misjoinder of Parties Defendant—Causes of Action — Motion to Separately State and Number — Pleadings —Motion to Strike—Discretion.*

Railroads—Action by Employee for Breach of Contract to Furnish Medical Attendance—Physician Improperly Joined as Defendant.
  1.  The relation of master and servant does not exist between a railroad company and a physician employed by it to treat injured employees; hence he may not be joined as defendant in an action by an employee against the company for breach of its contract under which it undertook, in consideration of a certain amount deducted monthly from his wages, to furnish competent medical attendance in case of illness or injury; joinder was improper for the further reason that there was no privity of contract between plaintiff and the physician.

---

1.  See 18 R. C. L. 492.

408    Borgeas *v.* Oregon etc. R. R. Co. et al.    [Mar. T. '25

[73 Mont. 407.]

Same—Master and Servant—Master's Retention of Unskilled Physician—Liability for Damages—Complaint.

2. Where an employer, bound by contract with his employee to furnish skilled medical attendance in case of injury to the latter, provides or retains an unskilled practitioner after being advised of ⱨis unfitness, he becomes liable for the physician's carelessness or malpractice and in his action against the employer for breach of the contract plaintiff employee may allege damage suffered by unskillful treatment.

Contract—Breach—Complaint—When Sufficient.

3. A complaint stating the facts constituting a contract imposing a duty upon defendant, its breach and resulting damages, in ordinary and concise language, is sufficient under section 9129, Revised Codes of 1921, and proof against a general demurrer.

Complaint—Breach of Contract—Where Pleading not Open to Motion Requiring Plaintiff to Separately State and Number Causes of Action.

4. Where the complaint states but one obligation and the breach thereof by several classes of negligence, it states but one cause of action and is not open to a motion to require the plaintiff to separately state and number his causes of action.

Railroads—Breach of Employer's Contract to Furnish Medical Attendance to Employee—Complaint—Proper Allegations.

5. Since the law imposes upon an injured person the duty of minimizing the damages, he may in his complaint set forth the reason why he failed to do so; he may also allege his condition at the time of the commencement of the action if the breach of duty by defendant was the proximate cause of that condition, and a motion to strike does not lie.

Pleading — Motion to Strike Portion of Complaint — When Court may Overrule Motion.

6. Where but one motion is made to strike a portion of the complaint, encompassing matters properly and improperly pleaded, the court may overrule it in its entirety, it not being its duty to separate the good from the bad or refuse the one and grant the other.

Same—Motion to Strike—Discretion.

7. A motion to strike a portion of the complaint is addressed to the sound discretion of the court, and therefore in the absence of a showing of prejudice or injury resulting to defendant in prosecuting his defense by permitting mere conclusions of law to remain in the pleading there was no reversible error.

Railroads—Selection of Physician for Employees Under Insurance Plan—Extent of Liability of Employer.

8. Where a railroad company withholds from the wages of its employees a certain amount monthly and with the aggregate thus obtained employs physicians and surgeons to treat such as become ill or are injured, and in doing so makes no profit therefrom, it is not liable to an employee for the carelessness or malpractice of a physician or surgeon in charge of his case, if it used reasonable care in his selection, but will be regarded as merely administering a charity or trust fund.

---

2. Liability of master for negligence of physician or surgeon employed at the master's expense to attend servant, see notes in 28 L. R. A. 548; 4 L. R. A. (n. s.) 66; 40 L. R. A. (n. s.) 486. See, also, 18 R. C. L. 506.

[73 Mont. 407.]

Same—Failure of Employer to Provide Medical Attendance—Measure of Damages.
9.  The measure of damages, under ordinary circumstances, for the failure of an employer to provide medical or surgical attention and hospital accommodations where a small amount is deducted monthly from his wages therefor, is the reasonable sum expended in securing the same elsewhere, and the injured person may also recover for additional pain and suffering caused by reason of the refusal of his employer to perform his duty in the premises.

Same—Failure of Employer to Furnish Medical Attendance—Duty of Employee.
10.  An employee who is refused medical attendance or proper hospitalization by his employer who must furnish it under its contract in that behalf, is in duty bound to secure the same elsewhere; and therefore an instruction which unqualifiedly advised the jury that plaintiff was entitled to recover if defendant refused to furnish him the required attention was error as not taking into consideration the limited liability of defendant (par. 8) nor the duty of plaintiff in the premises.

Same—Proximate Cause of Condition of Plaintiff—Burden of Proof.
11.  Plaintiff had the burden of showing that defendant company's failure to furnish him with proper medical and hospital attention under its contract with him was the proximate cause of his physical condition at the time of the commencement of the action.

---

Damages, 17 C. J., sec. 319, p. 1020, n. 26.
Master and Servant, 26 Cyc., p. 1050, n. 3, 4, 5; p. 1082, n. 20.
Pleading, 31 Cyc., p. 119, n. 79; p. 642, n. 49; p. 643, n. 55, 60.
Trial, 38 Cyc., p. 1632, n. 10.

*Appeal from District Court, Beaverhead County; Joseph C. Smith, Judge.*

Action by Carl Borgeas against the Oregon Short Line Railroad Company and another. Judgment for plaintiff and defendants appeal. Reversed and remanded, with directions to dismiss the complaint.

*Mr. John E. Corette* and *Mr. T. E. Gilbert,* for Appellants, submitted a brief; *Mr. Corette* argued the cause orally.

Thompson on Negligence, volume 4, section 3841, page 111, lays down the general rule relating to the duty of the master for negligence or malpractice of a physician or surgeon, as follows: "The relation of master and servant, or principal

---

10.  Right of employee to resort to outside physician where aid is provided by employer, see note in Ann. Cas. 1918D, 1053.

and agent, does not exist between an employer—a railroad company—and a surgeon employed by it to render professional services to its injured employee; the reason being that the employer has no right to control him in his treatment of the case. Therefore, the rule of *respondeat superior* does not apply, and the employer is not responsible for the negligence or malpractice of the physician or surgeon, provided the employer has discharged his duty by exercising reasonable care to the end of employing a physician or surgeon who possesses the knowledge and skill ordinarily possessed by other members of his profession. This is especially true where the employer is under no legal obligation to furnish medical or surgical aid to its wounded employees." (See, also, *Texas Cent. Ry. Co.* v. *Cumwalt,* 103 Tex. 603, 30 L. R. A. (n. s.) 1206, 132 S. W. 113; *Wells* v. *Ferry Baker Lumber Co.,* 57 Wash. 658, 29 L. R. A. (n. s.) 426, 107 Pac. 869; *Louisville & N. R. Co.* v. *Foard,* 104 Ky. 456, 57 S. W. 342; *Maine* v. *Chicago, B. & O. Ry. Co.,* 109 Iowa, 260, 70 N. W. 630, 80 N. W. 315; *Pittsburgh etc. R. Co.* v. *Sullivan,* 141 Ind. 83, 50 Am. St. Rep. 313, 27 L. R. A. 840, 40 N. E. 138; *Wells* v. *Ferry Baker Lbr. Co.,* 57 Wash. 658, 29 L. R. A. (n. s.) 426, 107 Pac. 869; *Foreman* v. *Hunter Lumber Co.,* 36 Cal. App. 763, 173 Pac. 408; *Atchison etc. Ry. Co.* v. *Ceiler,* 54 Kan. 340, 38 Pac. 282; *Richardson* v. *Carbon Hill Coal Co.,* 10 Wash. 648, 39 Pac. 95; *Engirbritson* v. *Tri-State Cedar Co.,* 91 Wash. 279, 157 Pac. 677; *Guy* v. *Lanark Fuel Co.,* 72 W. Va. 728, 48 L. R. A. (n. s.) 536, 79 S. E. 941; *Poling* v. *San Antonio etc. Ry. Co.,* 32 Tex. Civ. 487, 75 S. W. 69.)

*Mr. J. E. Kelly,* for Respondent, submitted a brief and argued the cause orally.

Basis of plaintiff's right to recovery: "By contract the employer may be bound to furnish medical attendance as where the employer retains a portion of wages of each employee for medical services. And in such a case the employer is liable

to the employee in damages for failure to properly provide medical attendance in case the employee is sick or injured." (26 Cyc. 1050; see, also, *Morse* v. *Powers,* 45 Vt. 300; *Southern Pac. Co.* v. *Mauldin,* 19 Tex. Civ. App. 166, 46 S. W. 650; *Illinois Cent. R. Co.* v. *Gheen,* 112 Ky. 695, 66 S. W. 1087; *Scanlon* v. *Galveston etc. R. Co.* (Tex. Civ. App.), 86 S. W. 930; *St. Louis So. Western R. Co.* v. *Reagan,* 79 Ark. 484, 7 L. R. A. (n. s.) 997, 96 S. W. 168; *Owens* v. *Atlantic Coast Lumber Corp.,* 108 S. C. 258, 94 S. E. 15; *Woody* v. *Carolina Spruce Co.,* 176 N. C. 643, 97 S. E. 610; *Jackson* v. *Pacific Coast C. Milk Co.,* 61 Or. 158, 37 L. R. A. (n. s.) 757, 120 Pac. 1; *Harding* v. *Ostrander Ry. etc. Co.,* 64 Wash. 224, 116 Pac. 635; 2 Elliott on Railroads, sec. 222, p. 314; *Northern Cent. R. Co.* v. *State,* 29 Md. 420, 96 Am. Dec. 545; *American Tin Plate Co.* v. *Guy,* 25 Ind. App. 588, 58 N. E. 738.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The complaint herein alleges that the defendant railroad company, in the operation, maintenance and repair of its line, employs a great number of men, and that the work is necessarily hazardous and employees are often injured. It then alleges that for the purpose of caring for sick and injured employees, the company secures the services of a hospital at Pocatello, Idaho, with competent physicians and surgeons, and also employs local physicians and surgeons, and that for the purpose of reimbursing itself it deducts seventy-five cents per month from the wages of each employee. It then alleges that plaintiff was employed by said company as a section-hand at Apex, Montana, where, in the month of December, 1922, he was injured, but continued to work up to the latter part of January, 1923, when, by reason of the injury, the femur bone of his right leg broke; that plaintiff thereupon reported his condition and applied to defendant Stephan, the local physician of the defendant company, for hospital accommodations

and surgical treatment, to which he was entitled. Plaintiff then alleges that the defendants "then and there so negligently, carelessly and unskillfully behaved and conducted themselves" that the aid was denied and refused him, "in that the defendants directed and dispatched the plaintiff, against his will, wishes and over his protest" to the Murray Hospital at Butte, without supplying plaintiff with the means to pay, and thereafter, within ten days, he was compelled to leave the hospital for want of means, and that on his return home, twenty miles from Dillon, Dr. Stephan refused to visit him.

The complaint further alleges that plaintiff was a poor man, unable to secure assistance elsewhere, and that, had defendants given him the attention to which he was entitled, he would have been restored to his former condition as a robust, able-bodied man, but that by reason of the failure of defendants he was left with a shortened and diseased limb, to his damage in the sum of $30,000, and caused great pain and suffering to his damage in the sum of $5,000; that the treatment he was entitled to was of the reasonable value of $2,000; that his bill at the Murray Hospital was $98, and that none of these sums has been paid.

The defendants filed separate motions to require plaintiff to separately state and number the several alleged causes of action, and, therein, moved to strike certain portions of the complaint. The motion was overruled. Defendants then filed separate demurrers to the complaint, which were overruled. Thereupon, by separate answers, the defendants admitted the maintenance of a hospital department and securing of the services of a hospital and physicians and surgeons, and the deduction of the amount alleged for such maintenance; admitted that plaintiff was in the employ of the company at the time of the injury, and denied the remaining allegations of the complaint. The defendant company, in its separate answer, then alleged as an affirmative defense that the hospital department is maintained exclusively for the benefit of the employees, without profit to the company, and that any in-

jured employee is entitled to such benefit, except where the injury results from drunkenness, fights, brawls or unlawful conduct, and, in case of sickness, except for venereal diseases and ailments resulting from intemperance or vicious habits. It then alleges that the only duty of the company is to exercise reasonable care in the selection of reasonably competent physicians and surgeons, and that it has performed that duty.

On the trial defendants objected to the introduction of any evidence; at the close of plainiff's case they moved for a judgment of nonsuit, and at the close of all of the evidence moved for a directed verdict. The ruling of the court was adverse to defendants in each instance.

The court, over the objections of the defendants, gave to the jury the following instruction: "The court instructs the jury that if they believe from the evidence that the defendants, or either of them, was obligated to furnish plaintiff medical assistance, and, being so obligated, either knowingly or negligently failed to so furnish such assistance as charged in plaintiff's complaint, and that the plaintiff has suffered damage by reason thereof, then in estimating the damage of the plaintiff in this case, you are to take into consideration the physical pain and suffering of the plaintiff and which was caused by such failure, if any such has been shown by the evidence; the amount of his loss in earnings to this date, if any, and which was caused by such failure; and the impairment of his ability to earn money in the future, if any has been shown, and which was caused by said failure."

Following this instruction, the jury returned a verdict for the plaintiff and against the defendants jointly for the sum of $35,000, and judgment was duly entered thereon. From this judgment the defendants have appealed. They make twenty-two specifications of error. We deem it unnecessary to discuss all of these assignments; except in respect to the matters for which the judgment is reversed, we find no substantial error in the record. The specifications discussed will sufficiently appear from our treatment of them.

414    Borgeas *v*. Oregon etc. R. R. Co. et al.    [Mar. T. '25

[73 Mont. 407.]

1. Defendants assign as error the court's action in overruling the separate demurrers interposed.

(a) As disclosed by the pleadings, this is an action in contract, for the breach thereof. While the defendant Stephan was in the employ of the defendant company, he was not an "employee" in the ordinary sense of the term, as used in relation to master and servant or principal and agent. In the ordinary personal injury cases arising out of the negligent act or omission of an employee, the negligent employee may be joined with his employer in an action for damages, under the rule of *respondeat superior*. (*Knuckey* v. *Butte Electric Ry. Co.*, 41 Mont. 314, 109 Pac. 979.) The act of the servant becomes the act of the master, who has the right to control the manner in which he discharges his duties, and, when injury results, they are joint tort-feasors. But the relation of master and servant, or of principal and agent, does not exist between a railroad company as employer, and a surgeon employed to treat an injured employee, the reason being that the employer has no right to control the surgeon in the treatment of the case (*Quinn* v. *Kansas City M. & B. Ry. Co.*, 94 Tenn. 713, 45 Am. St. Rep. 767, 28 L. R. A. 552, 30 S. W. 1036; *South Florida Ry. Co.* v. *Price*, 32 Fla. 46, 13 South. 638), and the rule of *respondeat superior* does not apply in cases of such employment. (4 Thompson on Negligence, p. 111.) Again, plaintiff's contract, if any, is with the defendant company, and with this contract defendant Stephan had nothing to do; whatever his contract with the company there was no privity of contract between him and the plaintiff.

If defendant Stephan was liable in any manner to plaintiff, it was for malpractice or carelessness on his part in the treatment of plaintiff as a patient, either the company's or his own, in an action not arising out of plaintiff's contract with the defendant company, and the two could not be joined, as was done in this case. (Sec. 9130, Rev. Codes 1921; *Cummings* v. *Reins Copper Co.*, 40 Mont. 599, 107 Pac. 904.)

[1]

It follows that the court erred in overruling the separate demurrer of the defendant Stephan.

(b) The demurrer of the defendant company sets out four grounds; three of these cover the same general objections to the complaint on which this defendant bases its contention that the complaint is (1) uncertain; (2) ambiguous; and (3) unintelligible, in that it cannot be ascertained therefrom in what manner the company breached its contract, and that it cannot be ascertained therefrom whether, in addition to damages for the breach of the contract, plaintiff seeks to recover, as against the defendant Stephan, damages for unskillful treatment and malpractice.

On these contentions we are of the opinion that the complaint is sufficiently clear and intelligible in stating a cause of action for the breach of its contract to furnish the aid to which the plaintiff was entitled or, having furnished such aid initially, for failure to furnish the skilled and careful treatment required. The allegations as to the manner of treatment go, not to the cause of action, but to the element of damage suffered.

If the defendant company, being in duty bound to furnish [2] skilled and careful surgeons, by reason of lack of reasonable care in its selection, or the retention of a surgeon after it had been brought to the attention of the officers of the company that such a one through lack of skill or by reason of personal habits has become unfit to serve in that capacity, provides an injured employee with such unskillful or careless surgeon, then it would be liable for the carelessness or malpractice of the surgeon, and the allegation of damage therefrom may properly appear in the complaint. (4 Thompson on Negligence, sec. 3842; *Wabash Ry. Co.* v. *Kelley*, 153 Ind. 119, 52 N. E. 152, 54 N. E. 752.)

The fourth ground of demurrer is the general one that the [3] complaint does not state facts sufficient to constitute a cause of action. It states "in ordinary and concise language" the facts constituting a contract imposing upon the defendant

company a duty, the breach thereof and resulting damages, both general and special, and therefore states a cause of action. (Sec. 9129, Rev. Codes 1921; *Raiche* v. *Morrison,* 37 Mont. 244, 95 Pac. 1061; *American Tin Plate Co.* v. *Guy,* 25 Ind. App. 588, 58 N. E. 738.) The demurrer was therefore properly overruled.

2. The defendants moved the court to require the plaintiff to separately state and number what it contends were four [4] separate causes of action.

As we view the complaint, it states but one obligation or duty, and the breach thereof by two classes of negligence: The refusal to extend aid, and careless and unskillful treatment; it then alleges resultant damages. Such a complaint does not attempt to state two or more causes of action. "In general, it may be said that each contract embraces but one cause of action." (1 Sutherland on Code Pleading, p. 143, sec. 319.) "Two or more acts of negligence contributing to the injury complained of may properly be charged in one count in the complaint." (21 R. C. L. 471, sec. 36.)

"The test of whether there is more than one cause of action stated or attempted to be stated in a complaint is not whether there are different kinds of relief or objects sought, but whether there is more than one primary right sought to be enforced or one subject of controversy presented for adjudication." (21 R. C. L., p. 468, sec. 33; *Zinc Carb. Co.* v. *First Nat. Bank,* 103 Wis. 125, 74 Am. St. Rep. 845, 79 N. W. 229.)

There being but one cause of action stated as against the defendant company, the plaintiff could not be required to act under this motion.

3. The motion to strike is directed against five paragraphs [5] of the complaint. Some of the allegations attacked are of matters seeking to excuse plaintiff's failure to secure other aid, after the alleged refusal of the defendants. As the law imposes upon an injured person the duty of doing all in his power to prevent the accumulation of damages, if an excuse

existed for plaintiff's failure, he was entitled to allege these matters. Other matter therein is as to plaintiff's condition at the time of the commencement of the action; if this condition was the direct result of defendant company's breach of the contract, in other words, if the breach was the proximate cause of plaintiff's then condition, plaintiff was entitled to allege that condition, as he did.

Certain of the matters alleged are in the nature of conclusions and the pleading might be bad therefore, but, as there **[6]** is but one motion directed against matters properly pleaded and those having no proper place in the complaint, the court cannot be put in error for overruling the motion in its entirety. As this court has heretofore held: "No duty devolved upon the court to separate the two parts of this motion, to refuse one and grant the other. It might rule on the motion as made, and, if as a whole it should not have been granted, the ruling will stand." (*Bowlin Liquor Co.* v. *Fauver,* 43 Mont. 472, 117 Pac. 103; see, also, *Dorais* v. *Doll,* 33 Mont. 314, 83 Pac. 884.)

There was no prejudice shown or injury resulting to defendant by reason of permitting mere conclusions of law to **[7]** remain in the complaint, and, as stated in the recent case of *Mead* v. *Leo Sheep Co.* (Wyo.), 232 Pac. 511: "Proceedings of this nature are addressed to the sound discretion of the trial court, and we see nothing in the way of issues were finally framed in the cause or in the subsequent proceedings at the trial to indicate that this discretion was abused, or that the defendant was injured or prejudiced; * * * he was able to present whatever defenses he saw fit."

4. The principal questions involved in this appeal are as to the extent of the liability of the defendant company and the measure of damages for a breach of its duty, if a breach was shown. These questions are brought to our attention by specifications of error based upon the court's refusal to grant a motion for a directed verdict, on the giving of instructions,

and the refusal to give offered instructions. As these are all based upon the same condition, to-wit, the adoption by the court of plaintiff's theory and the rejection of that of the defendant company, they will be considered and disposed of together, and this will require a somewhat extended review of the evidence.

Plaintiff contends that, having breached its contract to give plaintiff medical and surgical attendance and hospital accommodations from the time of the injury until his injury had fully healed, defendant company as well as Stephan was liable to him for all pain and suffering caused thereby, his pecuniary loss and loss of earning capacity by reason of his condition. In support of this contention, counsel cites section 8667, Revised Codes of 1921, which provides that: "For the breach of an obligation arising from contract, the measure of damages * * * is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom," citing *Myers* v. *Bender*, 46 Mont. 497, Ann. Cas. 1916E, 245, 129 Pac. 330, and a number of cases from other states dealing with the element of pain and suffering. On this theory of the case, counsel presented to the court plaintiff's instruction No. 1, which was given as the court's instruction No. 8, heretofore quoted.

The evidence discloses that on or about December 16, 1922, the plaintiff was unloading ties from a box-car, using a pick; that the pick slipped out of the end of the tie, causing plaintiff to fall back, striking his hip against another tie. He got up immediately and continued to work without notifying the men about him, and continued in his employment for five or six weeks thereafter. He testified that the leg pained him. In the latter part of January, 1923, he took sick leave, and at the end of a week, while walking on level ground carrying a pail of slop to his home, the bone broke. He was taken to the office of Dr. Stephan at Dillon, where he walked up a flight of stairs on crutches, with two men steadying him. Dr.

Poindexter, called in by Dr. Stephan to see what he described as an "interesting case," testified that on his arrival plaintiff was placid of countenance, showing no signs of pain, and that he made no outcry when the limb was rotated, whereas, in an ordinary fracture, the least movement would cause excruciating pain. These two doctors made an X-ray photograph of the break, showing a "straight fracture." They questioned plaintiff and determined that it was a "pathological" fracture, that is, one due to no external injury but to diseased condition of the bone. This diseased condition might be the result of tuberculosis of the bone, cancer of the bone, or a syphilitic condition. As the doctors suspected syphilis and a determination would require a blood and spinal fluid test, and owing to the peculiar circumstances, they decided that they had best send the patient to Dr. Kistler, at the Murray Hospital, as "the best bone man in the state."

Plaintiff had not then advised Dr. Stephan that he was working for the company, and the doctor had theretofore known him as a farmer whose family he had attended. Plaintiff wanted to go home before going to Butte, and was permitted to do so; returning next day, he advised Dr. Stephan that he was an employee of the company and wanted to go to Pocatello, and that he had no money to pay hospital bills at Butte. The doctor still insisted that it was best for him to go to Butte. There is a conflict as to what was said at this time; plaintiff claiming that the doctor merely said that he did not care whether plaintiff ever paid his bill, and that he would not send him to Pocatello. The doctor testified that he was willing to send the patient to Pocatello and so advised him, but that he still felt that it was best that the patient should go to Butte, and that, if it proved to be a syphilis case, plaintiff was not entitled to hospital benefits. Whatever the conversation, plaintiff yielded and went voluntarily to the hospital at Butte. He stayed there about ten days, when he returned home. Dr. Kistler had X-rayed, set and band-

aged his leg. Plaintiff contends that a clerk insisted that the hospital could not accept the company for its pay, and asked him every two or three days if he could afford this or that medicine or treatment, and states that he left the hospital because he could not pay the bills that he knew would be presented to him. Dr. Kistler testified that the only reason plaintiff gave for leaving the hospital was that he wanted to get home, and that plaintiff's wife told him that Dr. Stephan would attend plaintiff at home. On leaving, Dr. Kistler told plaintiff that temporary bandages placed upon the limb would have to be removed when he got home, and weights adjusted, showing him how this should be done. On arriving home, February 11, a neighbor adjusted the weights. Plaintiff then sent word to Dr. Stephan, on three occasions, but the doctor did not come out to see him.

While in the Butte hospital, Dr. Kistler and others had made the test but had not yet reported to Dr. Stephan, and he testified that the case was Dr. Kistler's, and that it would be unethical for him to take it over until he heard from Dr. Kistler; that he inquired of Mrs. Borgeas, who informed him that Borgeas had been fixed up and was comfortable, and that there was nothing to it. Mrs. Borgeas testified that she made no such statement to the doctor, and that the reason the doctor gave her for not going was that his contract did not require him to make trips into the country.

On February 27, having no definite statement from Dr. Kistler, Dr. Stephan issued an order for plaintiff's reception at the Pocatello hospital. Plaintiff, however, did not go. He claimed that he could not make the trip unless Dr. Stephan came out and fixed him up as he was when he came from Butte. The doctor testified that this was not necessary, that all they had to do was to take him to the train on a stretcher. Months later plaintiff was sent to the Pocatello hospital by Dr. Stephan, as the fracture had not united, but nothing could then be done for him.

Doctors Stephan, Poindexter, Kistler and Grigg testified that the fracture was due to a diseased condition of the bone, while the only expert called by the plaintiff merely testified that, if it was an ordinary fracture, it should have healed in sixty to ninety days, and that, if the leg was short, the fracture had been improperly set. Prior to the injury plaintiff was a healthy, robust man.

On behalf of plaintiff it was shown that, before leaving the Murray Hospital, plaintiff gave his note for ninety-odd dollars to cover his hospital bill, and that, the latter part of the year, an action was commenced against him and his wages attached. However, the undisputed evidence is that he made no demand upon the company to pay the bill until after this suit, when a claim was presented to the company and paid.

The evidence on behalf of the defendants also shows that Dr. Stephan had authority to send plaintiff to the Murray or any other hospital, and that the defendant company made no profit from its hospital department.

It is admitted that all of the physicians and surgeons mentioned in the testimony are competent and skilled in their profession; no attempt was made to show otherwise. The contention on the trial was that the company failed and refused to furnish attention and hospital accommodation at all, not that those furnished were not proper. However, counsel contends that by reason of the failure alleged, and which he contends was proven, the defendant company was properly required to respond in damages for the present condition of the plaintiff. But the evidence discloses that the local physician sent the plaintiff to an admittedly good hospital, immediately on being called upon, where he was in charge of and ministered to by admittedly competent surgeons, and that the local physician had authority so to do; he left voluntarily. He contends that the Murray Hospital would not take the company for the bill, but, on the first occasion when he called the matter to the attention of the company, it paid

the bill. From all that appears in the evidence, plaintiff would have been permitted to remain at that hospital until a cure was effected, if such a cure was possible, and that the company would have paid such a bill as was presented. What part in his present condition the fact that he left the Murray Hospital, and less than two weeks thereafter refused to go to the Pocatello Hospital, played does not appear. While one witness testified that the fracture, if properly treated, should have healed, this testimony was based upon the assumption that it was an ordinary break, and would be pertinent to a claim that proper treatment was not given, rather than that treatment was refused.

The great weight of authority, in fact, practically the [8] unanimous holding of the courts on the subject, is that where an employer, such as the defendant company, withholds from the wages of its employees a small monthly amount, with the aggregate of which it employs physicians and surgeons to treat such as become ill or are injured, and in doing so it is not promoting its own interest by making a profit out of such employment, such employer is not liable to an injured employee for the carelessness or malpractice of such physicians or surgeons in charge of the case, provided it has used reasonable care in its selection of such physicians or surgeons, since it will be regarded as merely administering a charity or trust fund. (4 Thompson on Negligence, sec. 3841, p. 111; *Texas Cent. Ry. Co.* v. *Zumwalt,* 103 Tex. 603, 30 L. R. A. (n. s.) 1206, 132 S. W. 113; *Wells* v. *Ferry-Baker L. Co.,* 57 Wash. 658, 29 L. R. A. (n. s.) 426, 107 Pac. 869; *Louisville etc. Ry. Co.* v. *Foard,* 104 Ky. 456, 47 S. W. 342; *Maine* v. *Chicago, B. & Q. Ry. Co.,* 109 Iowa, 260, 70 N. W. 630, 80 N. W. 315; *Pittsburg etc. Ry. Co.* v. *Sullivan,* 141 Ind. 83, 50 Am. St. Rep. 313, 27 L. R. A. 840, 40 N. E. 138; *Foreman* v. *Hunter Lumber Co.,* 36 Cal. App. 763, 173 Pac. 408; *Atchison etc. Ry. Co.* v. *Zeiler,* 54 Kan. 340, 38 Pac. 282; *Guy* v. *Lanark Fuel Co.,* 72 W. Va. 728, 48 L. R. A. (n. s.) 536, 79

S. E. 941; *Poling* v. *San Antonio etc. Ry. Co.,* 32 Tex. Civ. App. 487, 75 S. W. 69; *Richardson* v. *Carbon Hill Coal Co.,* 10 Wash. 648, 39 Pac. 95.)

The measure of damages, under ordinary circumstances, for the failure to provide medical or surgical attention and [9] hospital accommodations is the reasonable sum expended in securing the same elsewhere. (*Illinois Cent. Ry. Co.* v. *Gheen,* 112 Ky. 695, 66 S. W. 639, 68 S. W. 1087.) This measure of damages is in accord with the provisions of section 8704, Revised Codes of 1921, which reads as follows: "Notwithstanding the provisions of this chapter, no person can recover a greater amount in damages for the breach of an obligation than he could have gained by the full performance thereof on both sides, except in the cases specified in the chapters on exemplary damages, penal damages, and in sections 8685, 8692 and 8693."

And it is the duty of one injured while in the employ of such employer, if refused surgical attention and hospital [10] accommodations, to secure the same elsewhere, and to hold his employer for the cost thereof. (*Illinois Cent. Ry. Co.* v. *Gheen, supra; Harding* v. *Ostrander Ry. etc. Co.,* 64 Wash. 224, 116 Pac. 635.) In addition to the reasonable cost of obtaining services elsewhere, an injured employee may recover for additional pain and suffering caused by reason of the refusal of his employer to perform its duty. (*Galveston Ry. Co.* v. *Rubio* (Tex. Civ. App.), 65 S. W. 1126; *Harding* v. *Ostrander Ry. etc. Co., supra.*) This would seem to be a reasonable rule.

5. By its instruction numbered 8, quoted herein, the court advised the jury, without reservation or qualification, that plaintiff was entitled to recover for all pain and suffering, loss, and loss of earning capacity, caused by the refusal of the company to furnish him the required attention, if the jury found that the company did so refuse or neglect to furnish such aid. A similar instruction was given in the *Illinois*

424   Borgeas *v.* Oregon etc. R. R. Co. et al.   [Mar. T. '25

[73 Mont. 407.]

*Central Case* cited above, and in holding the instruction erroneous, the supreme court of Kentucky said: "The general and universal rule of law in regard to damages is that every person must do all that can reasonably be done to render the damage for any act or omission as light as possible. Under this rule, the appellee, when he was refused admission to the hospital, if such be the case, was bound to do all that he could to keep the consequent injury and damage as light as possible. To do so, he should have employed medical and surgical attention. * * * This is the reasonable requirement of the law. That course would be expected of any person: that he would use all means to prevent further injury to himself."

The plaintiff here contends that he met this requirement, for he was financially unable to employ a surgeon or secure hospital accommodations; but is this contention upheld by the evidence? And does the evidence, taken in its most favorable light, show that plaintiff was, as he contends, denied and refused surgical attention and hospital accommodations?

It is admitted that the accommodations at the Murray Hospital were ample for his needs, and that the surgeons there were competent and skillful; he does not show that he could not have remained there until a cure was effected, if a cure was possible, but admits that he left that institution voluntarily and only because he would be unable to pay his bill. He did not report to the company nor to its officers and agents the statement of the clerk that the hospital would not take the company for the bill; nor did he report that he would have to leave that institution, as he thought, for lack of funds. He did not attempt, after his return home, to secure the services of any other surgeon, nor attempt to get to the hospital at Pocatello after receiving an order for his admission thereto.

It is not reasonable that any man would remain inactive and permit himself to become a cripple for life, for lack of means, or that any reputable surgeon would not, if called upon, treat the patient under the circumstances, nor that a hospital in

good standing would force him to leave merely because he could not pay his bill. Had plaintiff remained at the Murray Hospital when sent there by Dr. Stephan, acting for the defendant company, he would have received all that he could ask from the defendant company, and there is no question but what, if the company refused to pay the bill, on a showing that plaintiff was entitled to such service under his contract, he could have compelled the payment of the amount charged him by that institution, and, under the law, this would have been the full liability of the company.

Can it be said, then, that by his own negligence and voluntary acts plaintiff could increase that liability, or impose upon the defendant company a liability which, in the absence of such carelessness and acts of the plaintiff would not exist? We think not. The burden rested upon plaintiff to show [11] that the proximate cause of his condition was the act or omission of the defendant company, and this he has failed to do.

Instruction No. 8, quoted, was clearly erroneous, in that it did not take into consideration either the limited liability of the defendant company under a contract from which it made no profit nor the duty of the plaintiff, on a breach of the contract, as above outlined.

6. At the close of plaintiff's case defendants moved for judgment of nonsuit, but, as it did not appear at that time that the local physician had authority to send plaintiff to the Murray Hospital, and did not appear that his hospital bill had been paid, the motion was properly overruled, as a failure on the part of the company to comply with its contract would appear from a showing of failure to provide hospital accommodations or a failure to pay therefor.

7. However, defendants showed by uncontradicted testimony that the physician had authority to send the plaintiff to the Murray Hospital, and that the bill was paid on its first presentation to the company. At the close of all of the evidence

defendants moved for a directed verdict. We are of the opinion after a careful examination of all of the evidence adduced and of the authorities, that plaintiff has wholly failed to establish a breach of the contract alleged by a preponderance of the evidence, or at all, and that it would be impossible for him to do so. There was no breach of contract or duty on the part of the defendant company; the motion for a directed verdict should have been granted.

The judgment is reversed and the cause remanded, with direction to dismiss the action.

*Reversed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.